# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF CONNECTICUT

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

|  |  |
|---|---|
| PREDRAG CICVARA, | Civil Action No.3:09-cv-2054 (JCH) (HF) |
| Plaintiff, | |
| v. | |
| THE GILLETTE COMPANY and PROCTER & GAMBLE COMPANY and DURACELL, AN ENTITY OF UNKNOWN FORM and LYNNE BURNETT, | July 7, 2010 |
| Defendants. | |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x


## DEFENDANTS' MEMORANDUM OF LAW IN
## OPPOSITION TO PLAINTIFF'S MOTION TO COMPEL DISCOVERY


Edward Cerasia II (ct 13096)
Hema Chatlani (phv 04023)
SEYFARTH SHAW LLP
620 Eighth Avenue, 32nd Floor
New York, New York 10018-1405
(212) 218-5500
Attorneys for Defendants

## TABLE OF CONTENTS

Page

I.      PRELIMINARY STATEMENT ........................................................................... 1

II.     BACKGROUND FACTS................................................................................... 3

III.    ARGUMENT.................................................................................................. 6

        A.      The Applicable Standard Under Rule 26................................................ 6

        B.      Cicvara Is Not Entitled To Discovery Concerning His New Allegations Of
                Discrimination That Do Not Appear In The Amended Complaint ...................... 7

        C.      Defendants' Responses and Objections Are Appropriate ....................... 9

IV.     CONCLUSION ............................................................................................. 17

i

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Croom v. W. Conn. State Univ.*,
   218 F.R.D. 15 (D. Conn. 2002) ................................................................7

*Dembinski v. Pfizer, Inc.*,
   628 F. Supp. 2d 267 (D. Conn. 2009) ......................................................8

*Edwards v. William Raveis Real Estate*,
   No. 08-CV-1907, 2009 U.S. Dist. LEXIS 42400 (D. Conn. May 18, 2009) ............8

*Favale v. Roman Catholic Diocese of Bridgeport*,
   233 F.R.D. 243 (D. Conn. 2005) ..............................................................7

*Hickman v. Taylor*,
   329 U.S. 495 (1947) ..................................................................................7

*Karath v. Bd. of Trs. of Tunxis Cmty. College*,
   No. 3:07-CV-1073, 2009 U.S. Dist. LEXIS 115026 (D. Conn. Dec. 10, 2009) ..........10

*Legnani v. Alitalia Linee Aeree Italiane, S.P.A.*,
   274 F.3d 683 (2d Cir. 2001) .....................................................................8

*Oppenheimer Fund Inc. v. Sanders*,
   437 U.S. 340 (1978) ..................................................................................7

*Petrosino v. Bell Atl.*,
   385 F.3d 210 (2d Cir. 2004) .....................................................................8

*Tyszka v. Edward McMahon Agency*,
   188 F. Supp. 2d 186 (D. Conn. 2001) ......................................................8

*Wells Fargo Bank, N.A. v. Konover*,
   No. 3:05-CV-1924, 2009 U.S. Dist. LEXIS 18988 (D. Conn. Mar. 4, 2009) ............7

**OTHER AUTHORITIES**

Fed. R. Civ. P. 26 ...............................................................................................6

Fed. R. Civ. P. 34 ...............................................................................................6

Fed. R. Civ. P. 37(a)(4) ....................................................................................17

# I. **PRELIMINARY STATEMENT**

Defendants The Gillette Company, The Procter & Gamble Company ("P&G"), and Lynne Burnett (collectively, the "Defendants") respectfully submit this memorandum of law in opposition to plaintiff Predrag Cicvara's ("Cicvara's") motion to compel discovery.

Cicvara worked for P&G in Bethel, Connecticut, until June 15, 2009, when P&G terminated his employment for cause for violating P&G's Worldwide Business Conduct Manual. Specifically, P&G learned through an investigation that, while Cicvara was on a business trip to Hong Kong, he made unwanted, sexual advances on Bel Liu ("Liu"), a representative of a P&G client known as Practical Flashlight Company ("Practical"), including admittedly telling Liu, "I could rape you." After his termination, Cicvara attempted to exercise options to purchase P&G's common stock, but was precluded from doing so because the options were cancelled by operation of the terms of the Stock Option Plan when he was terminated for cause.

On November 16, 2009, Cicvara filed his lawsuit, in which he seeks the value of his stock options, claiming that he was not terminated for cause within the meaning of the Stock Option Plan. All of his claims in the Amended Complaint relate to his termination and effort to obtain the value of his stock options. Thus, discovery should be limited to those claims and the basis for his termination.

In response to Cicvara's document requests, Defendants have produced over five hundred pages of documents consisting, for example, of the following: Cicvara's personnel file and pay records; job descriptions for the two positions he held; P&G's Worldwide Business Conduct Manual; the applicable Stock Option Plans and Amendments; P&G Rewards of Leadership Compensation Program and its Long-Term Incentive Plan; Cicvara's phone log; various e-mails and text messages sent between Cicvara and Liu; various e-mails from Andrew Yau, an employee of Practical, regarding the incident with Liu; and documents and notes regarding

P&G's investigation of the incident and the termination of Cicvara's employment. Simply put, Defendants produced all documents in their position concerning the basis for Cicvara's termination, the investigation leading up to that decision, and the cancellation of his stock options.

Despite the fact that P&G has produced all of these documents, Cicvara contends that Defendants' discovery responses are insufficient.[1] Specifically, in his motion to compel discovery, Cicvara maintains that he is entitled to discovery related to P&G employees who had no involvement in the decision to terminate his employment and to events that occurred, if at all, years before his termination in June 2009. For instance, he seeks documents concerning an alleged affair between two unrelated P&G employees, Mani Parmar ("Parmar") and Ann Cardinale ("Cardinale"), in 2007, documents related to his unfounded complaint in 2008 regarding P&G's purported "illegal" sale of Duracell batteries, and his "rejection" of a flashlight shipment. Yet these documents are not reasonably likely to lead to the discovery of admissible evidence as to whether he is entitled to the value of his stock options.

Obviously recognizing that these documents are unrelated to his claims in the Amended Complaint for stock options, Cicvara now asserts that these documents are relevant to his claim of "discrimination." But, Cicvara has not alleged a discrimination claim in the Amended Complaint, nor has he moved for leave to amend his Amended Complaint to add a discrimination claim. Because the documents he seeks are not related to the claims in the Amended Complaint, the Court should deny his motion to compel.

---

[1] While Cicvara states in his motion that Defendants' document production was late, that statement is disingenuous. Defendants received consent from Cicvara's counsel to extend the deadline for production and complied with that deadline.

In any event, any discrimination claim would fail as a matter of law because Cicvara has not exhausted his administrative remedies before the U.S. Equal Employment Opportunity Commission ("EEOC") or the Connecticut Commission on Human Rights and Opportunities ("CHRO"), and is time-barred at this point. For these reasons, the Court should not permit Cicvara to engage in a fishing expedition to support claims that do not appear in the case and which he cannot assert in the end.

Finally, Cicvara's motion seeks many documents that Defendants have already produced to him or that they do not have in their possession. Despite Defendants' representations to Cicvara's counsel that they are unaware of and cannot locate any additional documents responsive to the document requests, Cicvara stubbornly, and without any legitimate basis, insists that P&G is withholding certain documents. That assertion, however, has no basis in reality and seeks to create a discovery dispute where none exists.

For each of these reasons, the Court should deny Cicvara's motion to compel in its entirety.

## II. <u>BACKGROUND FACTS</u>

P&G is a large, international company that manufactures and sells a variety of brand name consumer products worldwide. In 2005, P&G acquired Gillette, an entity that produces various products, including the Gillete brand razors and shaving products, and the Duracell brand of batteries and flashlights.[2]

In approximately October 2000, Gillette hired Cicvara as the Manager Worldwide Technical and Consulting Services, in Bethel, Connecticut. In April 2002, Cicvara transferred to

---

[2]     Duracell ceased being its own legal entity on January 1, 1999, when it was merged into Gillette.

3

the OEM Business Services Group, where he continued to work as a manager.  Cicvara remained

in that position until June 15, 2009, when his employment was terminated for cause for making

unwanted sexual advances and telling Liu, a female employee of Practical, that he wanted to rape

her.

In early June 2009, Cicvara travelled to several cities in Asia to conduct factory audits.

While in Asia, Cicvara met and travelled with Liu and various other employees of Practical.  On

or about June 9, 2009, Liu called Andrew Yau ("Yau"), Chairman of Practical Group of

Companies, and informed him that Cicvara made unwanted sexual advances toward Liu during

the course of their travel together.  Yau subsequently alerted P&G's Human Resources

Department to Liu's allegations.  Upon hearing of the incident, Peggy Wilczewski

("Wilczewski"), P&G's Senior Human Resources Manager, and Dina Schmude ("Schmude"),

P&G's Human Resources Manager, conducted a full investigation to evaluate the merits of Liu's

complaint.

During the course of the investigation, P&G learned that Liu had recorded a portion of

her conversation with Cicvara, during which Cicvara made unwanted advances toward Liu.   On

June 15, 2009, Burnett, P&G's then-Global Human Resources Director, Kevin Babis, P&G's

Global Quality Assurance Leader, and Wilczewski spoke with Cicvara to obtain his version of

the events.  Although Cicvara first denied engaging in any inappropriate conduct, he later

voluntarily admitted that he visited Liu's hotel room while in Asia and felt attracted to Liu

because she was wearing short sleeping shorts.  Thereafter, Cicvara confessed that he told Liu

that he could "rape" her.

P&G terminated Cicvara's employment on that same day for engaging in inappropriate

and harassing behavior towards Liu.  Cicvara called Wilczewski to inquire about his stock option

plan.  By letter, dated June 16, 2009, Wilczewski informed Cicvara that, pursuant to Section

6(f)(A) of The Gillette Company 1971 Stock Option Plan, Cicvara's stock options were

cancelled as a result of his termination for cause.

On November 17, 2009, Cicvara filed this lawsuit in the Connecticut State Superior

Court.  In his original Complaint, Cicvara alleged the following six causes of action against P&G

and the other corporate defendants: "stock options," "unjust enrichment stock options,"

"severance package," "unjust enrichment severance package," "annual bonus," and "statutory

payment of wage."  After the corporate defendants removed the State Court Complaint to this

Court on the basis of diversity jurisdiction, Cicvara filed an Amended Complaint adding Burnett

as an individual defendant and asserting a separate cause of action for tortious interference with

business relationship against her.  (Am. Compl., ¶¶ 43-50.)  In the Amended Complaint, Cicvara

rephrased his former causes of action as follows:  breach of contract – stock options; unjust

enrichment – stock options; breach of contract – severance package; unjust enrichment –

severance package; breach of contract – annual bonus; unjust enrichment – annual bonus; and

statutory payment of wages.  He also asserts a tortious interference claim against Burnett, which

she has moved to dismiss under Rule 12(b)(6).

On April 19, 2010, Cicvara served Defendants with his document request.  After

obtaining Cicvara's counsel's consent for a short extension of time to respond to that document

request, Defendants produced its responses and documents on May 27, 2010.

On June 7, 2010, Hema Chatlani, counsel for Defendants, conferred with Attorney Skiber

about the alleged deficiencies in Defendants' discovery responses.  During their telephone

conference, Attorney Skiber insisted that Defendants were withholding documents.  Attorney

Chatlani informed Attorney Skiber that Defendants objected to some of Cicvara's requests and,

as to the remaining requests, Defendants had produced every document they currently possessed. Attorney Chatlani further informed Attorney Skiber that Defendants believed that their objections were justified and that their responses were sufficient, but that if Attorney Skiber wanted to narrow some of his requests, or if he had additional requests, he should put those requests in writing and defense counsel would work with P&G to obtain additional documents, if they exist.  Thereafter, Defendants did not receive any additional requests from Attorney Skiber. On June 14, 2010, Attorney Skiber and Attorney Edward Cerasia II conferred by telephone in an attempt to resolve the parties' discovery disputes.  In particular, Attorney Skiber indicated that the documents he sought were responsive to a number of allegations that had not been brought to Defendants' attention earlier, such as an alleged claim for discrimination.  Although Attorney Cerasia informed Attorney Skiber that neither the Complaint nor his Amended Complaint included a cause of action for discrimination – and that any such claim would be meritless, administratively deficient, and time-barred – Attorney Skiber has continued to pursue discovery on behalf of Cicvara with respect to this new claim.

On June 16, 2010, before providing Defendants with amended requests and an opportunity to resolve the discovery disputes without motion practice, Attorney Skiber filed the instant motion to compel.

### III. <u>ARGUMENT</u>

A.    <u>The Applicable Standard Under Rule 26</u>

Defendants' objections to Cicvara's discovery requests were properly asserted and Defendants have fulfilled their obligations under Fed. R. Civ. P. 34.  Contrary to well-established law and without any relationship to his claims for stock options in the Amended Complaint, Cicvara now asserts that he is entitled to discovery concerning unrelated employees who were not involved in the decision to terminate his employment, documents related to his  numerous

unfounded allegations against other P&G employees in years past, as well as overbroad

discovery related to *every* communication between Practical and P&G.  But, Cicvara cannot use

discovery tools to engage in an overbroad and unduly burdensome fishing expedition.  Discovery

has limitations; "[l]ike all matters of procedure, [discovery] has ultimate and necessary

boundaries."  *Oppenheimer Fund Inc. v. Sanders*, 437 U.S. 340, 351 (1978) (quoting *Hickman v.

Taylor*, 329 U.S. 495, 507 (1947)).  Although discovery requests are construed liberally, "the

party seeking discovery must make at least a prima facie showing that the discovery sought is

more than merely a fishing expedition."  *Wells Fargo Bank, N.A. v. Konover*, No. 3:05-CV-1924,

2009 U.S. Dist. LEXIS 18988, at *14 (D. Conn. Mar. 4, 2009).  The Court should not compel

discovery "absent a showing by the movant that the material sought is either directly relevant or

likely to produce relevant material."  *Croom v. W. Conn. State Univ.*, 218 F.R.D. 15, 16 (D.

Conn. 2002).  Additionally, the Court should not issue such an order "if the burden or expense of

the proposed discovery outweighs its likely benefit."  *Favale v. Roman Catholic Diocese of

Bridgeport*, 233 F.R.D. 243, 245 (D. Conn. 2005).  As demonstrated below, an application of

these standards dictate that the Court should deny Cicvara's motion to compel.

**B.**     **Cicvara Is Not Entitled To Discovery Concerning His New Allegations Of
           Discrimination That Do Not Appear In The Amended Complaint**

In his motion to compel, Cicvara repeatedly refers to alleged "sexual discrimination by

Defendants."  (*E.g.*, Pl.'s Br. at 5.)  While Defendants deny those allegations, it is notable that

there is no discrimination claim in the Amended Complaint in this case.  Consequently, Cicvara

cannot seek discovery relating to a claim that is not asserted in this case, and which cannot be

asserted in any proposed Second Amended Complaint because he failed to exhaust his

administrative remedies and, in any event, those claims are time-barred.

Before filing a complaint in federal court alleging a violation of Title VII, a plaintiff must first file a charge with the EEOC and obtain a right to sue letter. *Legnani v. Alitalia Linee Aeree Italiane, S.P.A.*, 274 F.3d 683, 686 (2d Cir. 2001). Likewise, the Connecticut Fair Employment Practices Act ("CFEPA") "require[s] exhaustion of administrative remedies against the parties named in the complaint. To fail to do so is fatal." *Tyszka v. Edward McMahon Agency,* 188 F. Supp. 2d 186, 195 (D. Conn. 2001). Here, Cicvara has not given the Court or Defendants any notice that he filed a charge of discrimination with either the EEOC or CHRO, and cannot now circumvent this mandatory administrative process by alleging a claim of discrimination in federal court. *Edwards v. William Raveis Real Estate*, No. 08-CV-1907, 2009 U.S. Dist. LEXIS 42400, at *10 (D. Conn. May 18, 2009) (dismissing plaintiff's CFEPA claims for failure to file a complaint with the CHRO).

Even if Cicvara were to file a charge of discrimination at this late juncture, his claim would nonetheless fail because it is time-barred. "An aggrieved employee wishing to bring a Title VII claim in district court must file an administrative complaint with the EEOC within 300 days of the alleged discriminatory act." *Petrosino v. Bell Atl.*, 385 F.3d 210, 219 (2d Cir. 2004). Under the CFEPA, a plaintiff must file a charge within 180 days from the date of the alleged discriminatory act. *Dembinski v. Pfizer, Inc.*, 628 F. Supp. 2d 267, 271 (D. Conn. 2009). Because it has been well over 300 days since P&G terminated Cicvara's employment for cause on June 15, 2009 – the last possible discriminatory act in this case – a discrimination claim under either statute is time-barred.

Because Cicvara has not alleged, and *cannot* allege, a claim of discrimination under Title VII or the CFEPA, he cannot seek discovery unrelated to his claims in the Amended Complaint

under the pretext that such documents *may* be related to a meritless, procedurally defective and time-barred discrimination claim.

**C.**     **Defendants' Responses and Objections Are Appropriate**

Defendants have provided Cicvara with substantial information and documents concerning his employment and the circumstances surrounding his termination.  They simply have no obligation to produce anything more.  Moreover, notwithstanding Cicvara's unfounded claim that Defendants are withholding relevant documents, Defendants have produced all documents in their possession relevant to his claims in the Amended Complaint and have not located any other documents responsive to his requests.

With respect to Cicvara's specific requests in his motion to compel, Defendants respond as follows:

Document Request No. 2:  This request seeks Defendants' personnel manuals, memoranda, and written policies concerning employment, performance, and discharges.  Plaintiff argues that Defendants objected to this request on the grounds that Plaintiff's request is over broad, unduly burdensome, vague, and ambiguous.

Defendants produced all documents in its possession relevant to this request.  For example, Defendants produced P&G's Worldwide Business Conduct Manual, Stock Option Plans and Amendments, P&G Rewards of Leadership Compensation Program, and its Long-Term Incentive Plan, which are the only "personnel manual[], memoranda [or] written [policy]" concerning Cicvara's employment, performance or discharge.  Defendants have already stated that they have not located any additional materials responsive to this request, which ends any dispute.

Document Request No. 7:  This request seeks any documents concerning communications between Plaintiff, Bel Liu, and/or Practical.  Plaintiff maintains that Defendants have "chosen only materials it deems supportive of its position for disclosure."  (Pl.'s Br. at 4.)

In response to this discovery request, Defendants produced several e-mails and text messages between Cicvara and Liu, e-mails to P&G employees from Andrew Yau, and documents related to P&G's conversations with Liu regarding the incident.  Notwithstanding this production, Cicvara now maintains that "there are multiple exculpatory emails that have not been disclosed to Plaintiff by Defendants."  (Pl.'s Br. at 4.)  Defendants already informed Attorney Skiber on June 7, 2010, that Defendants were unaware of any other e-mails responsive to this Request.

Document Requests No. 14, 15, and 16:  These requests relate to Plaintiff's 2007 complaints regarding an alleged affair between two P&G employees, Mani Parmar and Ann Cardinale. Plaintiff maintains that he is entitled to these documents because P&G allegedly reprimanded him for "coming forward with accusations of sexual discrimination" (Pl.'s Br. at 5); the investigation related to the complaint was conducted by Lynne Burnett, whom Plaintiff claims tortiously interfered with his contractual relationship; and because the documents promote an important "public policy issue that Plaintiff requires to file amended complaint in good faith." (*Id.*)

Defendants objected to this Request on the grounds that it purports to request documents that are neither relevant to the subject matter of this litigation nor reasonably calculated to lead to the discovery of admissible evidence.  First, Cicvara complained about the alleged affair between Mani Parmar and Ann Cardinale in 2007 – *two years* before his termination.  To the extent that Cicvara now maintains that P&G retaliated against him for his allegations regarding Parmar and Cardinale, the time between his complaint and his termination two years later is simply too remote to support an inference of causation, and thus should not form the basis for discovery. "Generally, courts have found that a time period of one year between the protected activity and the alleged retaliatory act is too attenuated to establish a causal relationship between the exercise of a federal constitutional right and an allegedly retaliatory action." *Karath v. Bd. of Trs. of Tunxis Cmty. College*, No. 3:07-CV-1073, 2009 U.S. Dist. LEXIS 115026, at *13 (D. Conn.

Dec. 10, 2009).  Here, Cicvara seeks discovery related to a complaint he made over *two* years

prior to his termination.

      Second, to the extent that Cicvara now argues that these documents promote "public

policy" and relate to his newly-minted claim of discrimination, as Defendants set forth above,

any amendment to the Amended Complaint would be futile because Cicvara's purported

discrimination claim is procedurally defective and time-barred.  Accordingly, information

regarding the investigation into Cicvara's 2007 complaint of the affair between Cardinale and

Parmar is not likely to lead to the discovery of admissible evidence.

<u>Document Requests No. 17, 18, and 19</u>:  These requests relate to Plaintiff's complaints regarding
the alleged illegal sale of Duracell batteries from Hong Kong to Latin America, and an alleged
Original Equipment Manufacturer irregularity.  The requests also seek all documents generated
by Rob Dapra and Mark Bertolami on the grounds that these two P&G executives were involved
in reviewing Cicvara's complaints of alleged illegal activities.  Plaintiff argues that this
information is related to his claims because it "demonstrates [Defendants'] continued disdain for
Plaintiff." (Pl.'s Br. at 8.) Additionally, Plaintiff maintains that Defendants "sought to squash
Plaintiff from performing a vital function per his job description" and that the documents again
relate to his purported amended claim of discrimination.[3]

      These Requests are overly broad, unduly burdensome, and neither relevant to the subject

matter of this litigation nor reasonably calculated to lead to the discovery of admissible evidence.

Similar to Cicvara's requests for documents related to the affair between Parmar and Cardinale,

Document Request Nos. 17, 18, and 19 seek documents that are completely tangential to the

claims in the Amended Complaint.  First, Cicvara's complaints about the alleged "illegal sale" of

batteries and the purported OEM irregularity in 2008 occurred well over a year prior to his

termination, and thus are unrelated to his termination.  The catalyst for his termination was his

admitted inappropriate sexual advances toward Liu.  Finally, as demonstrated above, any

---

[3]      Contrary to Cicvara's contention, the record shows that Defendants did not "squash" him
from doing his job and, as he knows, fully investigated any and all of his complaints.

discrimination claim is procedurally defective and time-barred, and thus cannot be the basis for discovery.

Document Request No. 20:  This request relates to all documents and communication generated by Lynne Burnett related to the termination of Plaintiff's employment.  Plaintiff argues that the documents generated by Burnett related to Plaintiff's termination are relevant to the instant action.

Defendants agree that the documents sought in Document Request No. 20 are relevant. But, Defendants already informed Attorney Skiber that they have produced all documents in their possession generated by Burnett and related to the termination of Cicvara's employment. Defendants further stated that they have been unable to locate additional responsive documents. Thus, Defendants have fully responded to this Document Request.

Document Request No. 21:  This request seeks all documents generated by Defendants related to Plaintiff's termination.

Cicvara argues, and Defendants agree, that these documents are related to the subject matter of his lawsuit.  Yet, the remainder of his argument is unclear.  Although Cicvara purports to agree that the Request is "unduly burdensome, and [requests] documents that are neither relevant to the subject matter of this litigation nor reasonably calculated to lead to the discovery of admissible documents," Defendants did not object to Document Request No. 21 on these grounds.  Rather, while Defendants generally objected that the Request is overly broad, vague and ambiguous, they did not withhold any documents from production on these grounds.  Indeed, Defendants informed Attorney Skiber that they produced all documents in their possession related to P&G's decision to terminate Cicvara's employment.  Because Defendants fully responded to this Request, Cicvara's objections lack merit.

Document Request No. 22:  This request seeks all documents and communication generated by Defendants regarding the cancellation of Plaintiff's stock options.

Inexplicably, Cicvara again maintains that he "agrees that the above request was overly broad unduly burdensome and purports to request documents that are neither relevant to the subject matter of this litigation nor reasonably calculated to lead to discovery of admissible documents." While Defendants objected on the grounds that the Request is overly broad, vague, and ambiguous, they did not maintain that the Request is not relevant. In any event, Defendants produced all documents in their possession that are responsive to this Request, including Gillette's Stock Option Plan and amendments; Long Term Incentive Plan and amendments; a memorandum prepared by Wilczewski summarizing her phone calls with Cicvara discussing the stock option plans; June 16, 2009 and July 6, 2009 letters from Wilczewski to Cicvara regarding his stock options, and Cicvara's July 3, 2009 letter to the stock option administrator. As Defendants already informed Attorney Skiber, P&G does not possess, and has not located, any additional documents responsive to this Document Request.

Document Request No. 23: This request seeks all documents and communication received or generated by Lynne Burnett related to the Plaintiff. Plaintiff maintains that this request is relevant because Burnett "made several comments that clearly indicates she harbored ill will towards Plaintiff while conducting a so-called investigation into allegations against Plaintiff."

Defendants generally objected to this Request on the grounds that it overly broad, unduly burdensome, vague, ambiguous, and purports to request documents that are neither relevant to the subject matter of this litigation nor reasonably calculated to lead to discovery of admissible evidence. Defendants properly limited their response to documents related to Burnett's participation in the investigation of the Bel Liu incident and her involvement in the decision to terminate Cicvara's employment. Cicvara is not entitled to *every* document received or generated by Burnett, a senior Human Resources official, related to *every single* matter that human resources dealt with on a regular basis.

Document Requests No. 27:  This request seeks all contracts, agreements, and understandings related to the business relationship between Practical and Defendants.  Plaintiff maintains that this Request "goes to the heart of the matter."

      This request is overly broad and unduly burdensome, as it will require P&G to produce every piece of paper and electronic documents relating to its relationship with Practical. Defendants informed Attorney Skiber that they would provide any relevant responsive documents that P&G has in its possession if Cicvara submits a narrowed, focused request.  To date, Cicvara has not done so.

Document Requests No. 28 and 29:  This request seeks *all* documents related to the production of flashlights by Practical from January 2005 to the present and any and all communication and documents from Practical to Defendants from January 1, 2009.  Plaintiff again maintains that these documents go "to the heart of the matter."

      This Request is overly broad and unduly burdensome.  Cicvara is *not* entitled to every document related to the production of flashlights over a five-year period, nor is he entitled to every communication from anyone at Practical to each and every employee at P&G.  The Request seeks overly broad information concerning employees and departments that have nothing to do with Cicvara, his termination, or the cancellation of his stock options.

Document Request No. 30:  This Request seeks all documents and communication exchanged between Practical and Defendants regarding the instant action.

      While Defendants objected to this request as overly broad, unduly burdensome, vague, and ambiguous, they produced all responsive documents in their possession.  Despite that representation, Cicvara boldly maintains that additional documents existed between Practical and P&G regarding the litigation.  Again, Defendants have complied with this Request, and are not aware of any additional responsive documents.

Document Request No. 31:  This Request relates to Plaintiff's rejection of a Practical flashlight shipment in mid-2009.  Plaintiff argues that this Request is relevant because Plaintiff rejected this shipment one day prior to his offensive behavior with Liu.

Whether Cicvara rejected a shipment of flashlights is irrelevant to this case, and not reasonably likely to lead to the discovery of admissible evidence. This is particularly true given that Cicvara admitted to engaging in inappropriate conduct towards Liu, (*see* Exhibit A, attached hereto ("I can promise that never again I will be a 'dirty man' with you.'")), so whether or not he rejected a shipment of flashlights does not change the fact that he admitted to such conduct and was terminated for that admitted conduct. Consequently, Cicvara is not entitled to any such documents relating to the rejected flashlight shipment.

Document Request No. 33: This request seeks information concerning the investigation of Austin Lin's expense reports. Plaintiff's motion appears to argue that Austin Lin retaliated against Plaintiff for uncovering Lin's "significant expense account fraud" and asked Liu, with whom he allegedly was having an affair, to launch the allegations against Plaintiff.

There is no evidence of Lin's "significant expense account fraud," let alone that it had any impact on Cicvara's termination. It also is irrelevant, given that Cicvara *admitted to inappropriate sexual behavior towards Liu.* Whether Lin brought this to P&G's attention or not, the fact remains that Cicvara admitted to engaging in inappropriate conduct, (*see* Exhibit A); thus, it is irrelevant how P&G learned about the incident in the first place or whether Lin has issues with his credibility because of purported false expense reports. Consequently, the Request seeks documents that are neither relevant to the claims in this case nor reasonably calculated to lead to the discovery of admissible evidence.

Document Requests Nos. 34, 36, and 37: These requests seek communication between Austin Lin and Bel Liu, incoming and outgoing phone calls from Bel Liu's cell phone, and all documents sent or received from Liu's e-mail address.

Cicvara disingenuously maintains that Defendants have only produced documents that support their position in this case. Simply put, he is wrong. Defendants have produced *all* responsive documents in their possession. Defendants have been unable to locate any additional responsive e-mails or documents. To the extent that Cicvara is referring to e-mails exchanged

prior to the Liu incident (and Defendants are not aware of any such e-mails), such emails would have been subject to P&G's normal document retention policy.  Prior to the institution of a litigation hold, email would not have been retained.

Document Request No. 38:  This request seeks all documents "related to disparaging nature towards the Plaintiff."

Cicvara agrees with Defendants that this Request is overly broad, unduly burdensome, and purports to request documents that are neither relevant to the subject matter of this litigation nor reasonably calculated to lead to the discovery of admissible evidence.  While Cicvara maintains that he asked for "more direct and focused Requests," (Pl.'s Br. at 16), he fails to identify these "more direct and focused Requests" in his moving papers and Defendants are not aware of any such tailored requests.

Document Request No. 39:  This request seeks any documents that "would be exculpatory towards the Plaintiff."  (Pl.'s Br. at 16.)

Defendants objected to this Request on the grounds that it calls for a legal conclusion and is premature at this stage of the discovery process, but further stated that they are not aware of any documents responsive to this Request.  Cicvara ignores Defendants' representation, and argues that Defendants' response "shows that Defendant[s] failed to consider the validity of the allegations against the Plaintiff when he was accused of misconduct."  (Pl.'s Br. at 16.)  But, Defendants cannot produce documents that they do not have.

## IV.  <u>CONCLUSION</u>

For all of the foregoing reasons, the Court should deny Cicvara's motion to compel discovery, grant Defendants' costs, including attorneys' fees, in connection with this motion pursuant to Fed. R. Civ. P. 37(a)(4), and grant Defendants such other and further relief as the Court may deem just and proper.

Dated this 7th day of July, 2010, at New York, New York.

Respectfully submitted,

SEYFARTH SHAW LLP

By   /s/ Edward Cerasia II
    Edward Cerasia II (ct 13096)
620 Eighth Avenue, 32nd Floor
New York, New York 10018
(212) 218-5500
ecerasia@seyfarth.com

Attorneys for Defendants