## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF CONNECTICUT

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
|  |  |
|---|---|
| | : |
| PREDRAG CICVARA, | :   Civil Action No. 3:09-cv-2054 |
| | :   (JCH) (HF) |
| Plaintiff, | : |
| | : |
| v. | :   April 15, 2011 |
| | : |
| THE GILLETTE COMPANY and PROCTER & | : |
| GAMBLE COMPANY and DURACELL, AN ENTITY | : |
| OF UNKNOWN FORM and LYNNE BURNETT, | : |
| | : |
| Defendants. | : |
| | : |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x


## DEFENDANTS' MEMORANDUM OF LAW
## <u>IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT</u>


Edward Cerasia II (ct 13096)
Hema Chatlani (phv 04023)
SEYFARTH SHAW LLP
620 Eighth Avenue, 32nd Floor
New York, New York 10018-1405
(212) 218-5500

Attorneys for Defendants
The Gillette Company
and The Procter & Gamble Company

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................ iii

I. PRELIMINARY STATEMENT ..................................................................... 1

II. SUMMARY OF UNDISPUTED FACTS ...................................................... 3

III. ARGUMENT ................................................................................................ 8

    A.    THE SUMMARY JUDGMENT STANDARD ................................... 8

    B.    CICVARA IS NOT ENTITLED TO THE VALUE OF HIS STOCK
        OPTIONS BECAUSE HIS OPTIONS WERE AUTOMATICALLY
        FORFEITED AS A RESULT OF HIS TERMINATION FOR CAUSE ............... 9

        1.    Cicvara Cannot Prevail On His Breach of Contract Claim Because
            The Company Did Not Breach Any Agreement Owed To Him ............... 10

        2.    The Company's Determination That Cicvara's Termination
            Constituted A Termination For "Cause" Under The Plan Was Not
            Arbitrary Or Capricious ............................................................... 13

        3.    Cicvara's Unjust Enrichment Claim Is Barred By His Remedies At
            Law ........................................................................................ 14

        4.    Even If Cicvara's Unjust Enrichment Claim Was Not Barred By
            The Express Terms Of The Contract, His Egregious Behavior
            Precludes Any Equitable Remedy ................................................ 15

    C.    CICVARA CANNOT PREVAIL ON HIS BREACH OF CONTRACT
        OR UNJUST ENRICHMENT CLAIMS SEEKING THE VALUE OF HIS
        2009 BONUS ...................................................................................... 16

        1.    Cicvara's Breach Of Contract Claim Fails Because He Was Not
            Employed On The Date The Bonuses Were Paid .............................. 17

        2.    Cicvara's Unjust Enrichment Claim Fails Because There Is An
            Express Contract Governing His Right To A Bonus .......................... 18

        3.    The Company Was Not Unjustly Enriched By Cicvara's
            Termination For Cause ................................................................ 18

    D.    CICVARA ADMITS THAT THERE IS NO FACTUAL BASIS
        ENTITLING HIM TO SEVERANCE PAY .......................................... 19

i

E.      CICVARA'S STATUTORY PAYMENT OF WAGES CLAIM SHOULD
        BE DISMISSED BECAUSE THE COMPANY DOES NOT OWE HIM
        ANY WAGES..................................................................................................20

IV. CONCLUSION....................................................................................................24

## TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*ABC Office Equip., Inc. v. Royal Cons. Bus. Prods., Div. of Triumph-Adler-Royal, Inc.*,
    721 F. Supp. 1557 (D. Conn. 1989) .........................................................................23

*Agugliaro v. Brooks Bros.*,
    927 F. Supp. 741 (S.D.N.Y. 1996) ..........................................................................12

*Anderson v. Baker*,
    2008 Ohio 6919 (Ohio Ct. App. 2008) ...............................................................16, 17

*Anderson v. Liberty Lobby, Inc.*,
    477 U.S. 242 (1986).................................................................................................9

*Capuano v. Island Computer Prods., Inc.*,
    382 F. Supp. 2d 326 (D. Conn. 2005)......................................................................10

*Celotex Corp. v. Catrett*,
    477 U.S. 317 (1986).................................................................................................9

*Chardavoyne v. Thames Water Holdings Inc.*,
    No. 03-CV-0056, 2008 U.S. Dist. LEXIS 33615 (D. Conn. Apr. 23, 2008)...................21, 22

*Christensen v. Bic Corp.*,
    18 Conn. App. 451 (1989) ..................................................................................17, 21

*City of Bridgeport v. Kasper Group, Inc.*,
    278 Conn. 466 (2006) ............................................................................................18

*Collins v. S. New Eng. Tel. Co.*,
    617 F. Supp. 2d 67 (D. Conn. 2009)........................................................................19

*Davidson v. Davidson*,
    2005 Ohio 6414 (Ohio Ct. App. 2005) ....................................................................15

*DeSantis v. Deutsche Bank Trust Co. Ams., Inc.*,
    501 F. Supp. 2d 593 (S.D.N.Y. 2007)......................................................................17

*Doner v. Snapp*,
    98 Ohio App. 3d 597 (1994) ..............................................................................10, 11

*Drybrough v. Acxiom Corp.*,
    172 F. Supp. 2d 366 (D. Conn. 2001)......................................................................23

*Duviella v. JetBlue Airways Corp.*,
    No. 04-CV-5063, 2008 U.S. Dist. LEXIS 36979 (E.D.N.Y. May 6, 2008) ....................11

*Gagne v. Vaccaro*,
255 Conn. 390 (2001) ...................................................................................................18

*Garry v. Bertucci's Rest. Corp.*,
No. 00-CV-0395, 2001 U.S. Dist. LEXIS 22947 (D. Conn. Sept. 26, 2001) ...................17, 22

*Gehrhardt v. Gen. Motors Corp.*,
581 F.2d 7 (2d Cir. 1978)..............................................................................................13

*Henwood v. Unisource Worldwide, Inc.*,
No. 01-CV-0996, 2006 U.S. Dist. LEXIS 71449 (D. Conn. Sept. 29, 2006) ...................20, 21

*Humayun v. Hudson News Co.*,
No. 95 Civ. 7926, 1996 U.S. Dist. LEXIS 19963 (S.D.N.Y. Dec. 31, 1996)........................12

*Kitson v. Berryman*,
2003 Ohio 2662 (Ohio Ct. App. 2003) ...............................................................................15

*Leland Eaves v. Designs for Fin., Inc.*,
No. 09-CV-3952, 2011 U.S. Dist. LEXIS 33654 (S.D.N.Y. Mar. 30, 2011) .........................19

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,
475 U.S. 574 (1986)..........................................................................................................9

*McGowan v. Administrator, Unemployment Compensation Act*,
220 A.2d 284 (Conn. 1966) ..............................................................................................23

*Messler v. Barnes Group, Inc.*,
No. CV 960560004, 1999 WL 61034 (Sup. Ct. Conn. 1999)...........................................10, 14

*Mohr v. Best Buy Stores, L.P.*,
547 F. Supp. 2d 783 (N.D. Ohio 2008)...............................................................................12

*Noonan v. Staples, Inc.*,
556 F.3d 20 (1st Cir. 2009)...............................................................................................13

*Padula v. Weston Bd. of Educ.*,
2009 Conn. Super. LEXIS 1557 (Conn. Super. Ct. June 9, 2009) ..........................................20

*Parma Cmty. Gen. Hosp. v. Premier Anesthesia of Parma*,
No. 09-CV-0325, 2011 U.S. Dist. LEXIS 11035 (N.D. Ohio Feb. 4, 2011) ...........................14

*Prey v. Kruse*,
No. 08-CV-0207, 2010 U.S. Dist. LEXIS 85096 (S.D. Ohio Aug. 19, 2010).........................16

*Russell v. Russell*,
91 Conn. App. 619 (2005) ................................................................................................18

iv

*Salling v. Budget Rent-A-Car Sys.*,
    No. 09-CV-2160, 2010 U.S. Dist. LEXIS 70603 (N.D. Ohio July 14, 2010) ........................16

*TFS Energy, LLC v. Campisi*,
    No. 06-CV-0191, 2009 U.S. Dist. LEXIS 11431 (D. Conn. Feb. 17, 2009) ..........................18

*Turner v. Langenbrunner*,
    2004 Ohio 2814 (Ohio Ct. App. 2004) ................................................................15

*W. World Ins. Co. v. Stack Oil, Inc.*,
    922 F.2d 118 (2d Cir. 1990)..............................................................................9

*Weir v. Anaconda Co.*,
    773 F.2d 1073 (10th Cir. 1985) .........................................................................13

*Weiskopf v. Am. Kennel Club, Inc.*,
    No. 00-CV-0471, 2002 U.S. Dist. LEXIS 10694 (E.D.N.Y. June 10, 2002) ........................19

*Welland v. Citicorp, Inc.*,
    No. 00-CV-0738, 2003 U.S. Dist. LEXIS 22721 (S.D.N.Y. Dec. 17, 2003) .........................13

*Wood v. Sempra Energy Trading Corp.*,
    No. 03-CV-0986, 2005 U.S. Dist. LEXIS 2848 (D. Conn. Feb. 22, 2005) ..........................22

*Ziotas v. Reardon Lawfirm, P.C.*,
    296 Conn. 579 ..............................................................................................21

## OTHER AUTHORITIES

Conn. Gen. Stat. § 31-71a(3) ..............................................................................20, 21, 23

Conn. Gen. Stat. § 31-72..........................................................................................20

## RULES

Fed. R. Civ. P. 1 ......................................................................................................9

Fed. R. Civ. P. 56(c) .................................................................................................8

## I.  PRELIMINARY STATEMENT

Defendants The Gillette Company and The Procter & Gamble Company (collectively, the "Company") respectfully submit this memorandum of law in support of their Fed. R. Civ. P. 56 motion for summary judgment seeking the dismissal of plaintiff Predrag Cicvara's ("Cicvara's") remaining claims in the Amended Complaint for breach of contract, unjust enrichment, and statutory payment of wages.[1]  As demonstrated below, the Court should grant summary judgment in favor of the Company because Cicvara has no competent evidence whatsoever from which a reasonable jury could find that the Company breached any alleged contract, was unjustly enriched, or owes Cicvara any unpaid wages.

Cicvara brought this action in a desperate attempt to undo the consequences of his own gross misconduct, which included visiting the hotel room of Bel Liu ("Liu"), a female employee of a Company supplier known as Practical Lighting Company ("Practical Lighting"), stripping down to his underwear and sitting on her bed, massaging her feet and back despite the fact that she had not asked him to do so, and admittedly telling her that "one could rape [her]." Thereafter, Cicvara sent Liu a barrage of text messages and e-mails apologizing for his actions and promising that he will never again act as a "dirty old man" with her.  When Cicvara's gross misconduct was communicated to the Company, it promptly investigated.  As a result of that investigation, the Company reasonably concluded that Cicvara's outrageous behavior violated its policy against harassment and its Purpose, Values and Principles ("PVPs"), and accordingly terminated his employment for cause.  As a result of that termination for cause, Cicvara's stock

---

[1]   On July 20, 2010, this Court granted defendant Lynne Burnett's ("Burnett's") Rule 12(b)(6) motion to dismiss the tortious interference claim against her.  Thus, Burnett is no longer a defendant in this case.  In addition, Duracell ceased being a legal entity as of January 1, 1998, (Defendants' Local Civil Rule 56.1 Statement of Material Facts ("Defs.' 56.1"), ¶ 2), and therefore is not a proper defendant in this case.

options were cancelled by operation of the terms of the Gillette Company 1971 Stock Option Plan (the "Plan"), which states that an employee forfeits his stock options if he is terminated for "gross misconduct which is materially and demonstrably injurious to the Company or the subsidiary."

Faced with the fact that his *own* inappropriate behavior led to his termination and ultimately caused him to forfeit his stock options, Cicvara filed a hodgepodge of claims attempting to recoup monies and benefits to which he is not entitled. The undisputed evidence, however, shows that the Company did not breach any promise to Cicvara and does not owe him *any* benefits or monies. With respect to his stock options claim, Cicvara's admitted inappropriate sexual advances and comments toward Liu violated the Company's policies and resulted in his termination for cause. As a result of that termination for cause, Cicvara's stock options were automatically forfeited, rendering his breach of contract and unjust enrichment claims as to those options baseless.

Cicvara's cause of action for breach of contract seeking to recover the value of his bonus and severance pay are equally untenable. Cicvara admits that he was not entitled to a bonus because he was not an "active employee" on the date that bonuses were paid out in 2009, as required by the Company's bonus plan. With respect to severance pay, Cicvara admits he was *never* promised such pay, and in fact cannot point to *any* writing indicating any entitlement to a severance package. Rather, Cicvara testified that he should have received severance pay because he *believes* that the Company provided such payments to employees who are involuntarily terminated as part of a reduction-in-force ("RIF"). First, summary judgment is not about what Cicvara "believes"; it is about admissible evidence that creates a genuine issue of material fact, which does not exist here. Second, whether the Company paid severance pay to employees who

2

were involuntarily terminated as part of a RIF is utterly irrelevant to this case because Cicvara was terminated *for cause* and not as a result of a RIF.

Cicvara also cannot circumvent the express terms of the Company's bonus plan and stock option agreement by seeking to recover the value of these benefits in unjust enrichment.  It is well established that restitution for unjust enrichment is simply unavailable when a contract exists governing the exact same subject matter.  In any event, even if Cicvara could circumvent the express terms of the contracts governing his bonus and stock options, and the fact that he was *never* promised severance pay, he still cannot recover based on unjust enrichment because this is an equitable remedy and his own gross misconduct precludes any such award.

Finally, Cicvara has no viable claim for unpaid "wages" under the Connecticut General Statutes.  Cicvara was fully compensated for all days worked and, as already explained, is not owed any further payment from the Company.  Moreover, under Connecticut law, severance pay and the type of bonus involved in this case do not constitute "wages."

For these reasons, and those demonstrated below, the Court should grant summary judgment in favor of the Company and dismiss Cicvara's Amended Complaint in its entirety.

## II. SUMMARY OF UNDISPUTED FACTS

The undisputed material facts in this case are set forth in the Company's Local Civil Rule 56.1(a)(1) Statement of Undisputed Material Facts.  For the Court's convenience, the Company incorporates herein those undisputed facts and provides the following summary of the facts.

Cicvara was last employed by the Company as Quality Assurance ("QA") Manager for Duracell Lighting in its Bethel, Connecticut office.  (Defs.' 56.1, ¶ 1.)  As QA Manager, Cicvara was responsible for interacting with the Company's suppliers on all quality-related issues, which included auditing the suppliers' factories and ensuring that they met the Company's quality standards.  (*Id.*, ¶ 15.)  Because Cicvara's managerial position required significant travel abroad

and substantial interactions with the Company's suppliers, the Company regarded him as its "face" when traveling abroad.  (*Id.*, ¶ 14.)  Indeed, the job duties for Cicvara's management position specifically required him to "[p]rovide professional representation of Duracell/P&G per the P&G Worldwide Business Conduct Manual" and stated that this professional representation was "vitally important in dealing with Contractors and Suppliers in that plans, decisions, and commitments could have significant impact from a financial and/or confidential perspective." (*Id.*)

In June 2009, Cicvara traveled to Indonesia, Thailand, and China for a multi-day audit of Practical Lighting's facilities.  (*Id.*, ¶ 22.)  The trip included overnight stays in Jakarta and Medan, Indonesia; Singapore; Bangkok, Thailand; and Guangzhou, China.  (*Id.*)  Liu and Andrew Yau ("Yau"), Practical's Chairman, traveled from Practical's headquarters in Hong Kong to meet with Cicvara and the Company's auditors at the various factories.  (*Id.*)

On June 8, 2009, while in Thailand, Liu, Yau and Yuen Yau, another Practical employee, had dinner with Cicvara.  (*Id.*, ¶ 26.)  Liu left dinner early and returned to her hotel room because she was not feeling well.  (*Id.*)  After dinner, Cicvara sent Liu a text message asking if he could visit her hotel room to bring her a "special dessert."  (*Id.*, ¶ 27.)  Although Liu initially said no, Cicvara continued to press her until Liu finally relented because she did not want to offend a customer.  (*Id.*)  Cicvara took that opportunity and visited Liu's room with his "special dessert." (*Id.*)

When he entered Liu's hotel room, Cicvara inexplicably stripped off his pants and sat on Liu's bed wearing nothing but his underwear and shirt.  (*Id.*, ¶ 28.)  He then started to massage her feet and touch her back, even though Liu had never asked him to do so.  (*Id.*, ¶ 29.)  Liu, who was lying in bed sick, told Cicvara to stop because she did not "like this."  (*Id.*)  Rather than

4

ceasing his inappropriate behavior, Cicvara told Liu that he could "rape her."  (*Id*., ¶ 30.)
Cicvara finally left the room after Liu repeatedly asked him to do so.  (*Id*.)

The next morning, on June 9, 2009, Liu left a Hard Rock Café shirt that Cicvara had
bought for her earlier during the trip outside of his hotel room door.  (*Id*., ¶ 31.)  When he found
the shirt at the foot of his door, Cicvara went to Liu's hotel room and asked her why she had
returned the shirt.  (*Id*.)  Liu told Cicvara that she was scared of him.  (*Id*.)  At that point, Liu
called Austin Lin ("Lin"), a Company employee with whom she had worked in the past, but
received his voicemail.  (*Id*.)  Lin's voicemail recorded portions of the conversation between
Cicvara and Liu.  (*Id*.)  After asking Liu a few more times why she had returned the shirt,
Cicvara finally left Liu's room.  (*Id*.)

Shortly thereafter, Cicvara sent Liu a text message stating, "Feel terrible that can't [*sic*]
be with you and pamper you."  (*Id*., ¶ 32.)  Less than fifteen minutes later, Liu once again
rebuffed Cicvara's unwanted advances by stating:  "Thx P.  I'm fine but I have to re-emphasize
that we are not either couples or lovers."  (*Id*.)  Cicvara did not take that polite rebuff, and
continued to barrage Liu with text messages and e-mails stating, among other things, that he was
"in a shock and disgusted by [himself] and [his] poor judgment of things" and acknowledging
that there was "no real excuse" for what he had done.  (*Id*., ¶¶ 32-35.)  Tellingly, Cicvara
admitted to her in writing that he had been a "[f]oolish dirty old man."  (*Id*., ¶ 34.)

Later on June 9, 2009, Liu spoke with Lin and told him about Cicvara's conduct from the
night before.  (*Id*., ¶ 36.)  Lin reported Cicvara's conduct to Dina Schmude ("Schmude"), the
Company's Human Resources Manager, and encouraged Liu to speak with her boss, Andrew
Yau.  (*Id*.)  Schmude relayed Lin's report to Lynne Burnett ("Burnett"), the Company's Global

Human Resources Director in Bethel, who advised Schmude to investigate the incident by speaking with both Liu and Cicvara.  (*Id*., ¶ 37.)

On June 11, 2009, Schmude and Peggy Wilczewski ("Wilczewski"), the Company's Senior Human Resources Manager in Bethel, called Liu in Hong Kong and inquired about Cicvara's behavior in Asia.  (*Id*., ¶ 38.)  Over the next hour and half, Liu provided Schmude and Wilczewski with details of Cicvara's inappropriate conduct during the audit and, in particular, his shocking actions in her hotel room on June 8, 2009.  (*Id*.)  The next day, Liu sent Schmude and Wilczewski the emails and text messages she exchanged with Cicvara.  (*Id*., ¶ 40.)  In her cover e-mail to Schmude and Wilczewski, Liu explained that she tried to be polite with Cicvara, whom she did not want to offend because he was a customer of Practical.  (*Id*.)

While the Company was investigating the report, Andrew Yau, who had by now learned of Cicvara's conduct, sent an e-mail to Nitesh Singh, the Company's Senior Purchasing Manager, informing Singh that Cicvara had made "inappropriate sexual advances" toward Liu during his trip to Asia.  (*Id*., ¶ 42.)  Yau added that Cicvara was no longer welcome at Practical in the future, and that the Company should send someone else for future audits.  (*Id*.)  Yau's e-mail about Cicvara's egregious conduct came at a time when the relationship between the Company and Practical was strained; indeed, Yau noted a few days later to Eric Lawson, the Company's Associate Director for the Duracell Division, that Practical was "very disappointed" with its business with the Company.  (*Id*., ¶ 43.)

On June 15, 2009, Burnett, Wilczewski and Kevin Babis ("Babis"), Cicvara's manager, met with Cicvara in a conference room and interviewed him regarding Liu's allegations.  (*Id*., ¶ 44.)  During that meeting, Cicvara admitted to visiting Liu's hotel room and touching her.  (*Id*., ¶ 45.)  When Burnett asked Cicvara whether he stated that he wanted to "rape" Liu, Cicvara

responded, "Look, it was in a hotel and she was dressed in a way.  I told her that I had a feeling I would rape her but I never had that in my mind and I didn't thin[k] she'd think about it seriously."  (*Id.*)  Amazingly, Mr. Cicvara then attempted to excuse his comment by suggesting that Liu's attire somehow provoked him; specifically, he stated that Liu was "dressed in very short shorts," which prompted him to tell her, "I'm a man and it looks like I could rape you like that.  You are showing off."  (*Id.*)  When asked if he had anything else to say, Cicvara stated, "If I was thinking of things the way it turned out, I should not have been touching her that way." (*Id.*, ¶ 47.)

At the end of their meeting, Burnett, Babis and Wilczewski asked Cicvara to remain in the conference room while they left to discuss the matter.  (*Id.*, ¶ 48.)  During that time, the three unanimously determined that Cicvara's employment should be terminated for engaging in egregious misconduct, which not only violated the Company's policy and PVPs, but also reflected poorly on the Company and negatively affected the Company's relationship with Practical.  (*Id.*)  They then returned to the conference room, when Burnett informed Cicvara that he was being terminated for violating the Company's PVPs and policy by engaging in harassing behavior toward Liu, an employee of a Company supplier.  (*Id.*)

On the same day of his termination, Cicvara contacted Wilczewski and asked whether he would receive a bonus for the year and whether he could still exercise certain stock options that he had with the Company.  (*Id.*, ¶ 56.)  Wilczewski informed him that she would research his questions.  (*Id.*)  Wilczewski then participated in a telephone conference with Burnett and Jason Muncy ("Muncy"), one of the Company's in-house attorneys who advises the business on securities and corporate law.  (*Id.*, ¶ 57.)  During that conference call, Burnett explained the reasons for Cicvara's termination, at which point Muncy stated that Cicvara's stock options were

automatically cancelled as a result of his termination for cause.  (*Id.*)  Muncy pointed

Wilczewski and Burnett to Section 6(f) of the Plan, which states that an employee's stock

options are automatically forfeited if the employee is terminated for "Cause."  (*Id.*)  That section

defines "Cause" as, among other things, engaging in "gross misconduct."  (*Id.*, ¶¶ 50, 57.)  The

next day, Wilczewski erroneously told Cicvara that he would receive a bonus when they were

paid out in September 2009, and informed Cicvara by letter and telephone that his stock options

had been automatically forfeited as a result of his termination for cause.  (*Id.*, ¶¶ 58-60.)

On September 15, 2009, Cicvara sent Wilczewski an e-mail inquiring about the status of

his bonus.  (*Id.*, ¶ 64.)  At that point, Wilczewski informed Cicvara that he was not entitled to a

bonus because the Company's Short Term Achievement Award ("STAR") plan provided that he

had to be actively employed on June 30th, the date that bonuses were paid, to be entitled to a

bonus.  (*Id.*)  Because Cicvara's employment ended on June 15, he was not eligible for a bonus

under the STAR plan.  (*Id.*, ¶ 65.)

Shortly thereafter, faced with the fact that his own misconduct resulted in the loss of his

benefits, Cicvara filed his lawsuit alleging breach of contract (Counts One, Three, and Five)

unjust enrichment (Counts Two, Four, and Six), and statutory payment of wages (Count Seven),

seeking to recover the value of his forfeited stock options, a bonus and a severance package.

### III.  ARGUMENT

### A.    THE SUMMARY JUDGMENT STANDARD

Summary judgment should be granted where "the pleadings, the discovery . . . [and]

affidavits show that there is no genuine issue as to any material fact and that the movant is

entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  Summary judgment provides a

procedure whereby determinations can be made without recourse to a costly, lengthy, and

unnecessary trial:

> [s]ummary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.'

*Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986) (quoting Fed. R. Civ. P. 1).

To carry its initial burden, the moving party must show that "there is an absence of evidence to support the nonmoving party's case." *Id.* at 325. A moving party need only show the absence of proof of any of the essential elements of the non-movant's case. *Id.* at 323. Once a properly supported motion for summary judgment has been made, the burden shifts to the non-moving party to proffer admissible evidence demonstrating that a trial is required because disputed issues of material facts exist. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). Thus, to withstand the motion, the non-movant must do more than present evidence that is merely colorable, conclusory or speculative; it must present "concrete evidence from which a reasonable [fact-finder] could return a verdict in [its] favor." *Id.* at 256; *W. World Ins. Co. v. Stack Oil, Inc.*, 922 F.2d 118, 121 (2d Cir. 1990) (non-moving party "cannot escape summary judgment merely by vaguely asserting the existence of some unspecified disputed material facts, or defeat the motion through mere speculation or conjecture") (citations & quotations omitted). In the end, the non-movant must do more than show "some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Applying this standard to the undisputed material facts in this case, summary judgment should be granted in favor of the Company.

**B.      CICVARA IS NOT ENTITLED TO THE VALUE OF HIS STOCK OPTIONS BECAUSE HIS OPTIONS WERE AUTOMATICALLY FORFEITED AS A RESULT OF HIS TERMINATION FOR CAUSE**

In his Amended Complaint, Cicvara asserts a breach of contract and an unjust enrichment claim seeking to recover the value of his forfeited stock options. (Am. Comp., ¶¶ 6-26.) As the

9

undisputed facts demonstrate, however, Cicvara cannot prevail on his breach of contract claim because the Company did not breach any agreement with him. As for his unjust enrichment claim, the law is clear that this equitable remedy cannot be asserted where there is an express contract governing the same subject matter. In any event, even if Cicvara were permitted to assert an unjust enrichment claim, he cannot point to any facts entitling him to recover under this equitable remedy because it was not unjust for Cicvara to lose his stock options as a result of his own egregious misconduct.

**1.      Cicvara Cannot Prevail On His Breach of Contract Claim Because The Company Did Not Breach Any Agreement Owed To Him**

To prevail on his breach of contract claim, Cicvara must establish the existence of a contract, performance by him, a breach by the Company, and damage or loss to him. *See, e.g.*, *Doner v. Snapp*, 98 Ohio App. 3d 597, 600 (1994).[2] Although the Company does not dispute that a valid contract existed (*i.e.*, the Plan), Cicvara's breach of contract claim nonetheless fails because he cannot establish that he performed under the terms and conditions of the Plan, or that the Company breached the terms of the Plan.

The clear and unambiguous terms of the Plan state that "[i]f an employee Participant is discharged for Cause . . . all his options shall *immediately* be cancelled effective as of the date of

---

[2]      Under the choice of law provision in Section 13 of the Plan, the Plan and each option issued under it shall be governed and issued in accordance with the laws of the State of Ohio. (Defs.' 56.1, ¶ 49.) Therefore, Cicvara's breach of contract and unjust enrichment claims as to the stock options are governed by the laws of the State of Ohio. *See Capuano v. Island Computer Prods., Inc.*, 382 F. Supp. 2d 326, 337 (D. Conn. 2005) (applying New York law to breach of covenant of good faith and fair dealing claim in light of choice of law provision); *see also Messler v. Barnes Group, Inc.*, No. CV 960560004, 1999 WL 61034, at *11-12 (Sup. Ct. Conn. 1999) (applying Ohio substantive law to unjust enrichment claim in light of choice of law provision). Because neither party has challenged the enforceability of the Plan and the choice of law provision selects Ohio law as governing, the Company's arguments are premised on the applicability of Ohio law.

termination of his employment."  (Defs.' 56.1, ¶ 50.) (emphasis added).  Section 6(f)(B) of the

Plan specifically defines "Cause" as "the Participant's engaging in illegal conduct or gross

misconduct which is materially and demonstrably injurious to the Company or the subsidiary."

(*Id*.)  The undisputed evidence before this Court shows that the Company legitimately concluded

that Cicvara engaged in this very type of gross misconduct when he engaged in sexually

harassing conduct and made sexually suggestive comments toward Liu in violation of the

Company's policies and PVPs.  (*Id*., ¶¶ 48, 57.)  Indeed, the Company substantiated Liu's highly

disturbing allegations that Cicvara inappropriately touched Liu in her hotel room and commented

that he could "rape her."  (*Id*., ¶¶ 44-47.)  Cicvara's shocking behavior also was corroborated by

his e-mails and text messages to Liu apologizing for his actions and promising not to behave like

a "dirty old man" with her again, as well as his admission to Burnett, Wilczewski, and Babis that

he had a "feeling [he] would rape her."  (*Id*., ¶¶ 33-35, 45-47.)

Although the Company would consider this type of behavior gross misconduct if engaged

in by *any* employee, it was particularly egregious for Cicvara because he was entrusted with

traveling abroad, meeting with suppliers, and acting as the face of the Company when interacting

with these suppliers; indeed, his job duties specifically included "[p]rovid[ing] professional

representation of Duracell/P&G per the P&G Worldwide Business Conduct Manual."  (*Id*., ¶ 14.)

Cicvara failed to professionally represent the Company as per the Worldwide Business Conduct

Manual, and also *completely* violated the Manual and the Company's PVPs by engaging in

sexually harassing conduct toward Liu.

The Second Circuit routinely has held that the lodging of a sexual harassment complaint

against an employee is a compelling reason for the employer's decision to terminate that

employee.  *See, e.g., Duviella v. JetBlue Airways Corp.*, No. 04-CV-5063, 2008 U.S. Dist.

11

LEXIS 36979, at *10 (E.D.N.Y. May 6, 2008) (granting summary judgment and concluding that employer's belief that plaintiff sexually harassed another employee provided a legitimate reason for his discharge), *aff'd*, 353 Fed. Appx. 476 (2d Cir. 2009) (summary order); *Agugliaro v. Brooks Bros.*, 927 F. Supp. 741, 746 (S.D.N.Y. 1996) (employer's "belief that [plaintiff] had sexually harassed a subordinate employee" is a "completely appropriate and justifiable reason for dismissing plaintiff"); *Humayun v. Hudson News Co.*, No. 95 Civ. 7926, 1996 U.S. Dist. LEXIS 19963, at *14 (S.D.N.Y. Dec. 31, 1996) ("An employer is justified in taking appropriate action against a sexual harasser. Acts of sexual harassment 'must be treated as an adequate basis for adverse personnel action.'") (citation omitted).

Here, the Company was more than justified in concluding that Cicvara engaged in gross misconduct when he visited Liu's hotel room, sat on her bed with only his underwear on, massaged her feet, and told her that he could "rape her." By engaging in that gross misconduct, Cicvara failed to act in accordance with the terms of the Plan, thus resulting in the automatic forfeiture of his stock options under the Plan. *Mohr v. Best Buy Stores, L.P.*, 547 F. Supp. 2d 783, 791 (N.D. Ohio 2008) (granting summary judgment for employer and holding that plaintiff did not act in accordance with the terms of the stock option agreement because the agreement stated that termination for a breach of company policy would result in the forfeiture of stock options, and plaintiff was terminated after using a gift card he found in the company's parking lot in violation of an unwritten policy prohibiting employees from using gift cards not belonging to them). Therefore, the Court should dismiss Cicvara's breach of contract claim as to the stock options.

2.    **The Company's Determination That Cicvara's Termination Constituted A Termination For "Cause" Under The Plan Was Not Arbitrary Or Capricious**

Courts have held that an employer's decision to terminate an employee's non-ERISA benefits, such as stock options, should be set aside *only if* the employer's decision was "arbitrary and capricious."  *Welland v. Citicorp, Inc.*, No. 00-CV-0738, 2003 U.S. Dist. LEXIS 22721, at *35-36 (S.D.N.Y. Dec. 17, 2003), *aff'd*, 116 Fed. Appx. 321, 322 (2d Cir. 2004) (summary order).  As such, if the employer has a reasonable basis for its decision, "the court may not substitute its judgment for that of [the employer] on the disputed factual issues." *Gehrhardt v. Gen. Motors Corp.*, 581 F.2d 7, 11 (2d Cir. 1978) (quotations omitted); *Welland*, 2003 U.S. Dist. LEXIS 22721, at *35 (where an employee's stock option plan provided that any unvested stock options would be forfeited if the plaintiff was terminated "for cause," the court rejected plaintiff's argument that "whether cause existed is a fact intensive inquiry that cannot be determined on a motion for summary judgment;" the court concluded that the company had a reasonable basis to find that the plaintiff's termination was "for cause" because he was terminated for violating company policy when he accepted gifts from a company vendor); *Noonan v. Staples, Inc.*, 556 F.3d 20, 34 (1st Cir. 2009) ("Even if we might disagree with Staples's action regarding [plaintiff's] firing, if Staples's decision was not arbitrary, capricious, or made in bad faith, then we must accord it deference, and consequently affirm the denial of [plaintiff's] stock options under the plain terms of the agreements," which provided that an employee's stock options would be cancelled automatically if the employee was terminated "for cause."); *Weir v. Anaconda Co.*, 773 F.2d 1073, 1080 (10th Cir. 1985) (employee's stock option agreement provided that employees terminated for cause are ineligible for stock options; although the plan did not define "for cause," Tenth Circuit held that the determination that

13

plaintiff's termination for poor performance was a "for cause" termination was not arbitrary, in bad faith, or fraudulent).

Here, the Company's decision to terminate Cicvara's employment for gross misconduct after he made inappropriate sexual advances and comments toward Liu was not arbitrary, capricious, or in bad faith.  The Company terminated Cicvara's employment only after speaking with Lui, who provided the Company with details of Cicvara's wrongdoing, and after speaking with Cicvara, who *admitted* to Burnett, Wilcewski and Babis, that, among other things, he had touched Liu and told her he "had a feeling [he] would rape her."  (Defs.' 56.1, ¶¶ 38-47.)  Given these undisputed facts, it was more than reasonable for the Company to conclude that Cicvara had engaged in gross misconduct in violation of its policies and that, as a result, his stock options were automatically forfeited by the terms and conditions of the Plan.

For these reasons, Cicvara cannot prove that he complied with his obligations under the Plan or that the Company breached any duty it owed to him under the Plan, which are essential elements of his breach of contract claim.  Consequently, the Court should grant summary judgment dismissing Cicvara's claims in Count One of the Amended Complaint.

### 3.    Cicvara's Unjust Enrichment Claim Is Barred By His Remedies At Law

Cicvara also asserts a claim for unjust enrichment as to the value of the stock options. (Am. Comp., ¶¶ 25-26.)  Because the parties entered into a contract governing Cicvara's entitlement to his stock options (*i.e.*, the Plan), Cicvara's unjust enrichment claim fails as a matter of law.  Under Ohio law, the equitable remedy of an unjust enrichment claim is simply "not allowed where an express contract governs the transactions at issue."[3]  *Parma Cmty. Gen.*

---

[3]    As stated in footnote 2, Cicvara's unjust enrichment claim seeking the value of his stock options is governed by Ohio law.  *Messler*, 1999 WL 61034, at *11-12.  However, as discussed in Section III.C.2., *infra*, Cicvara cannot recover even if Connecticut law applied because both

*Hosp. v. Premier Anesthesia of Parma*, No. 09-CV-0325, 2011 U.S. Dist. LEXIS 11035, at *9 (N.D. Ohio Feb. 4, 2011); *see also Davidson v. Davidson*, 2005 Ohio 6414, P19 (Ohio Ct. App. 2005) ("Ohio law does not recognize an equitable claim for unjust enrichment, as a matter of law, when an express contract covers the same subject matter."); *Turner v. Langenbrunner*, 2004 Ohio 2814, P38 (Ohio Ct. App. 2004) ("Unjust enrichment is an equitable doctrine to justify a quasi-contractual remedy that operates in the absence of an express contract or a contract implied in fact to prevent a party from retaining money or benefits that in justice and equity belong to another.").

Here, there is absolutely no dispute that the Plan expressly governs Cicvara's purported entitlement to the stock options.  Because there is an express contract on this very issue, Cicvara is precluded, as a matter of law, from asserting an unjust enrichment claim seeking the value of the stock options.  Thus, the Court should grant summary judgment for the Company dismissing Cicvara's unjust enrichment claim in Count Two of the Amended Complaint.

    **4.    Even If Cicvara's Unjust Enrichment Claim Was Not Barred By The Express Terms Of The Contract, His Egregious Behavior Precludes Any Equitable Remedy**

Even assuming, *arguendo*, that Cicvara could maintain an unjust enrichment claim, the Court should still grant summary judgment dismissing that claim because his inappropriate conduct precludes his recovery under this equitable remedy.  "[T]o prove unjust enrichment, a plaintiff must establish a benefit conferred by the plaintiff upon a defendant, the defendant's knowledge of the benefit, and the defendant's retention of the benefit under circumstances where it would be unjust to do so without payment."  *Kitson v. Berryman*, 2003 Ohio 2662, P18 (Ohio

---

Connecticut and Ohio law prohibit recovery under unjust enrichment when there is an express contract governing the same issue.

Ct. App. 2003). "Recovery under unjust enrichment is designed to compensate the plaintiff for the benefit he has conferred upon another, not to compensate him for a loss suffered." *Prey v. Kruse*, No. 08-CV-0207, 2010 U.S. Dist. LEXIS 85096, at *7 (S.D. Ohio Aug. 19, 2010) (quotations omitted).

Here, Cicvara cannot establish that he conferred any benefit on the Company entitling him to the value of his forfeited stock options. Further, Cicvara simply cannot recover under this equitable claim because it was not unjust for the Company to determine that he engaged in gross misconduct under the Plan and to conclude that he forfeited his stock options as a result of that misconduct. Rather, the undisputed facts establish the *opposite*: it would be unjust for Cicvara to receive the value of his stock options in light of his sexually harassing behavior and the harm he caused to Practical and the Company. *Salling v. Budget Rent-A-Car Sys.*, No. 09-CV-2160, 2010 U.S. Dist. LEXIS 70603, at *23 (N.D. Ohio July 14, 2010) (granting summary judgment and holding that it would be inequitable for plaintiff to recover in unjust enrichment); *Anderson v. Baker,* 2008 Ohio 6919, P42 (Ohio Ct. App. 2008) (affirming grant of summary judgment and explaining that plaintiff's unjust enrichment claim failed because he did not "present evidence that [defendant's] retention of any benefit was unjust"). Therefore, the Court should grant summary judgment dismissing Cicvara's cause of action for unjust enrichment.

**C.     CICVARA CANNOT PREVAIL ON HIS BREACH OF CONTRACT OR UNJUST ENRICHMENT CLAIMS SEEKING THE VALUE OF HIS 2009 BONUS**

In Counts Five and Six of his Amended Complaint, Cicvara asserts claims for breach of contract and unjust enrichment with respect to his bonus for 2009.[4] Cicvara cannot prevail on

---

[4]     Unlike the relevant stock option plan, the STAR plan does not contain a choice of law provision. According, Connecticut law applies to Cicvara's claims under the STAR plan for breach of contract and unjust enrichment.

his bonus claims because the express terms of the Company's bonus plan required that he be employed on the date bonuses were paid.  Because Cicvara was terminated for cause prior to the date on which bonuses were paid, he admittedly was not entitled to a bonus payment under the plan.  Cicvara's unjust enrichment claim fails once again because there is an express "contract" or policy governing Cicvara's entitlement to a bonus and, in any event, he cannot establish that equity demands that the Company pay him a bonus.

      **1.**       **Cicvara's Breach Of Contract Claim Fails Because He Was Not <u>Employed On The Date The Bonuses Were Paid</u>**

Cicvara's entitlement to a bonus was subject to the terms and conditions of the Company's STAR plan.  Cicvara admits that the STAR plan required that he be an "active employee as of June 30 (the close of the fiscal year for which the award is payable) to receive an award."  (Defs.' 56.1, ¶ 65.)  Because Cicvara was not an active employee as of June 30, (*id.*, ¶¶ 63-65), he was *not* entitled to a bonus in 2009.  *See*, *e.g.*, *Garry v. Bertucci's Rest. Corp.*, No. 00-CV-0395, 2001 U.S. Dist. LEXIS 22947, at *6 (D. Conn. Sept. 26, 2001) (explaining that employer did not pay employee bonus because she was not "an active employee during the week in which bonuses are distributed to receive any earned bonus," as required by the plan); *Christensen v. Bic Corp.*, 18 Conn. App. 451, 456 (1989) (holding that jury verdict should be set aside on plaintiff's implied contract theory because although bonus plan stated that "[b]onuses will be paid some time during the first quarter, after the operating results for the previous year are announced," that provision did not entitle plaintiff to a bonus after he was discharged and before bonuses were authorized); *DeSantis v. Deutsche Bank Trust Co. Ams., Inc.*, 501 F. Supp. 2d 593, 601 (S.D.N.Y. 2007) (granting summary judgment and explaining that "[t]he HR Policies in the Handbook make clear that . . . to receive a bonus, an employee must be employed

17

by the Bank on the date bonuses are paid").  Therefore, the Court should grant summary judgment dismissing Cicvara's bonus claim.

### 2.    Cicvara's Unjust Enrichment Claim Fails Because There Is An Express Contract Governing His Right To A Bonus

Similar to Cicvara's unjust enrichment claim as to the value of his stock options, Count Six for unjust enrichment concerning his bonus should be dismissed because his purported entitlement to any bonus is governed by an express policy, the STAR plan, thus precluding a claim for unjust enrichment.  It is a fundamental precept of Connecticut law that the existence of a written agreement precludes a claim for unjust enrichment.  *City of Bridgeport v. Kasper Group, Inc.*, 278 Conn. 466, 472 n.4 (2006) ("It is well established . . . that an express contract between the parties precludes recognition of an implied-in-law contract governing the same subject matter") (quotations omitted); *Gagne v. Vaccaro*, 255 Conn. 390, 401 (2001) ("Indeed, lack of a remedy under the contract is a precondition for recovery based upon unjust enrichment."); *Russell v. Russell*, 91 Conn. App. 619, 638 (2005) ("Action for unjust enrichment cannot lie in the face of an express contract.") (quotations omitted).

Here, it is undisputed that there is a valid and enforceable "agreement" or policy governing the terms and conditions of Cicvara's bonus – the STAR plan.  Because Cicvara's claim for a bonus is governed exclusively by the STAR plan, he cannot maintain an unjust enrichment claim and this Court should grant summary judgment dismissing that claim as a matter of law.

### 3.    The Company Was Not Unjustly Enriched By Cicvara's Termination For Cause

Even if Cicvara's unjust enrichment claim relating to his bonus was not covered by the express terms of the STAR plan, he is still not entitled to recover because unjust enrichment is an *equitable* remedy, and Cicvara's own gross misconduct bars any such remedy.  *See TFS Energy,*

*LLC v. Campisi*, No. 06-CV-0191, 2009 U.S. Dist. LEXIS 11431, at *15  (D. Conn. Feb. 17, 2009) (holding that former employee could not recover value of bonus under a theory of unjust enrichment because the facts revealed "unclean hands on the part of the [employee] and an enforceable agreement that excludes payment of a bonus.  The mere fact that there might be an amount the [employee] would have received under the agreement had he not been properly terminated for cause does not mean the company has been unjustly enriched").  Thus, the Court should grant summary judgment dismissing the unjust enrichment claim on this ground alone.

### D.     CICVARA ADMITS THAT THERE IS NO FACTUAL BASIS ENTITLING HIM TO SEVERANCE PAY

In his Amended Complaint, Cicvara asserts a cause of action for breach of contract, and once more throws in unjust enrichment, seeking to recover a severance package.  (Am. Comp., ¶¶ 27-32.)  Yet, Cicvara cannot point to any agreement or promise entitling him to a severance package, and admitted during his deposition that he seeks a severance package because he believes that the Company *may* have provided a severance package in the past to employees terminated as part of a RIF.  (Defs.' 56.1, ¶¶ 66-67.)  Cicvara's claim for a breach of contract is meritless because he cannot even point to an *actual contract*.  *See, e.g.*, *Collins v. S. New Eng. Tel. Co.*, 617 F. Supp. 2d 67, 80 n.17 (D. Conn. 2009) ("It goes without saying that an action for breach of contract requires the existence of a valid contract."); *see also Weiskopf v. Am. Kennel Club, Inc.*, No. 00-CV-0471, 2002 U.S. Dist. LEXIS 10694, at *18 (E.D.N.Y. June 10, 2002) (granting summary judgment on breach of contract claim where "plaintiff ha[d] not shown the existence of an agreement"); *Leland Eaves v. Designs for Fin., Inc.*, No. 09-CV-3952, 2011 U.S. Dist. LEXIS 33654, at *57 (S.D.N.Y. Mar. 30, 2011) (dismissing breach of contract claim because "Plaintiffs fail[ed] to provide facts regarding any specific contract between the parties, how or when such contract was formed, or any terms of the contract(s) at issue").

Cicvara's unjust enrichment claim is equally defective because the evidence establishes that his own highly inappropriate sexual advances and comments toward Liu resulted in his termination for cause.  He cannot now claim that the Company was unjustly enriched by failing to offer him severance pay for his termination for cause.  *Padula v. Weston Bd. of Educ.*, 2009 Conn. Super. LEXIS 1557, at *27 (Conn. Super. Ct. June 9, 2009) (rejecting plaintiff's argument that "defendant was unjustly enriched by the unpaid sick time and retirement benefits" which plaintiff did not receive because he was terminated for cause because plaintiff was an at-will employee, "the defendant was within its rights to terminate the plaintiff," and "plaintiff has failed to present evidence that the defendant has been unjustly enriched")

For these reasons, the Court should grant summary judgment dismissing Cicvara's claims with respect to severance pay.

**E.    CICVARA'S STATUTORY PAYMENT OF WAGES CLAIM SHOULD BE DISMISSED BECAUSE THE COMPANY DOES NOT OWE HIM ANY WAGES**

Cicvara alleges that the Company owes him money and penalties under the Connecticut General Statutes for the value of his stock options, bonus, and severance pay.  (Am. Comp., ¶¶ 39-42.)  He has no viable claim.

"To make out a *prima facie* case under Conn. Gen. Stat. § 31-72, the plaintiff must demonstrate that (1) the defendant is an employer; (2) the amount sought to be recovered qualifies as a wage under § 31-71a(3); and (3) the employee is entitled to monies that were withheld wrongfully by the defendant employer."  *Henwood v. Unisource Worldwide, Inc.*, No. 01-CV-0996, 2006 U.S. Dist. LEXIS 71449, at *55-56 (D. Conn. Sept. 29, 2006), *aff'd*, 282 Fed. Appx. 26 (2d Cir. 2008).  Cicvara's claims under the wage payment statute are defective because, as demonstrated above, he was *not* entitled to a bonus, severance pay or stock options,

and none of these monies were wrongfully withheld by the Company.  Moreover, Cicvara cannot establish that the bonus or severance pay he seeks qualify as "wages" under Section 31-71a(3).

As demonstrated above, Cicvara is not entitled to the value of his stock options because his termination for "Cause" resulted in the automatic forfeiture of those options, he is not entitled to the payment of a bonus under the express terms of the STAR plan, and he has absolutely no right to severance pay.  Because Cicvara cannot establish that he is entitled to any of these benefits, his claim for unpaid "wages" fails as a matter of law.  *See Henwood*, 2006 U.S. Dist. LEXIS 71449, at *56-57 (dismissing plaintiff's wage payment claim because he did not establish that former employer owed him any unpaid commissions); *Christensen*, 18 Conn. App. at 459 (concluding that plaintiff could not recover under wage payment statute because he could not show that the employer owed him any unpaid wages).

While Cicvara's failure to show entitlement to any unpaid wages alone warrants dismissal of his claims for statutory "wages," his claims also fail because severance pay and the type of bonus involved in this case do not constitute "wages" under Connecticut law.  "[A] bonus constitutes wages where the bonus amount is determined according to the plaintiff employee's work effort rather than the employer's overall success."  *Chardavoyne v. Thames Water Holdings Inc.*, No. 03-CV-0056, 2008 U.S. Dist. LEXIS 33615, at *9-10 (D. Conn. Apr. 23, 2008).  If a bonus is not contingent on the efforts of the plaintiff alone, but rather is determined in accordance with the overall performance of the company, such a bonus does not constitute wages.  *Id.*  Indeed, courts have held that a bonus does not constitute "wages" even if "payment of a bonus was contractually required and only the amount of the bonus was discretionary."  *Ziotas v. Reardon Lawfirm, P.C.*, 296 Conn. 579, 588-89 (explaining that such a bonus is not within definition of wages because "[a]lthough an employee may have a justified expectation of

21

additional compensation when the employer is contractually obligated to give a bonus to the employee and any contractual conditions, such as the employer's annual profitability, are met, the relationship between performance and compensation is still attenuated if the amount of the bonus is discretionary and dependent on factors other than the employee's performance").

Here, the STAR plan guidelines provided a formula that factored in each business unit's performance, as well as the Company's total results, for that fiscal year in determining an employee's bonus. Because the bonus was not contingent on Cicvara's performance alone, the bonus does not constitute "wages" under Connecticut law. *See Chardavoyne*, 2008 U.S. Dist. LEXIS 33615, at *10 (granting summary judgment on plaintiff's wage act claim where "plaintiff's bonus award was calculated pursuant to [a] formula rather than his individual work performance" and "[n]o evidence indicate[d] that this award was promised in exchange for additional services or was based on plaintiff's individual performance as defined by extant case law"); *Garry*, 2001 U.S. Dist. LEXIS 22947, at *12 (granting summary judgment on wage payment claim where the plaintiff's bonus plan was "not promised in exchange for additional services or based on an employee's individual performance"; rather, plaintiff's bonus was contingent on the performance of the restaurant as a whole); *Wood v. Sempra Energy Trading Corp.*, No. 03-CV-0986, 2005 U.S. Dist. LEXIS 2848, at *33 (D. Conn. Feb. 22, 2005) (granting summary judgment and dismissing wage payment claim because bonus plan indicated that plaintiff's entitlement to a bonus was "based on [the employee's] performance *and that of Sempra Trading and its subsidiaries*") (emphasis in original).

Likewise, severance pay is not considered to be "wages" under Connecticut law because severance pay "is not compensation for labor or services rendered, and because wages, unlike severance pay, cease when employment does." *Drybrough v. Acxiom Corp.*, 172 F. Supp. 2d

366, 371 (D. Conn. 2001) (quotations & citations omitted); *McGowan v. Administrator,*

*Unemployment Compensation Act*, 220 A.2d 284, 286 (Conn. 1966) ("Since, in the connotation

of the statute, wages cease when employment does, severance pay cannot be considered

wages.").  Because severance pay is not considered "wages" under Connecticut law, Cicvara

simply cannot prevail on his claim for unpaid wages based on severance pay.  *ABC Office*

*Equip., Inc. v. Royal Consumer Bus. Prods., Div. of Triumph-Adler-Royal, Inc.*, 721 F. Supp.

1557, 1559 (D. Conn. 1989) ("Neither this court's research nor the parties' have revealed any

Connecticut case law construing severance pay as "wages" under § 31-71a.").  Accordingly, the

Court should grant summary judgment to the Company on Cicvara's wage payment claims in

Count Seven of the Amended Complaint.

## IV.  **CONCLUSION**

Based on the foregoing undisputed facts, arguments and authorities, the Court should grant the Company's motion for summary judgment; grant to the Company its attorneys' fees and costs in this case; and grant to the Company such other and further relief as the Court may deem just and proper.

Dated this 15th day of April, 2011, at New York, New York.

Respectfully submitted,

SEYFARTH SHAW LLP

By  _s/ Edward Cerasia II_
    Edward Cerasia II (ct 13096)
    Hema Chatlani (phv 04023)
620 Eighth Avenue, 32nd Floor
New York, New York 10018
(212) 218-5500
ecerasia@seyfarth.com

Attorneys for Defendants
 The Gillette Company
 and The Procter & Gamble Company