# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF CONNECTICUT

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
:
PREDRAG CICVARA,                              :     Civil Action No. 3:09-cv-2054
:     (JCH) (HF)
Plaintiff,           :
:
v.                              :     June 16, 2011
:
THE GILLETTE COMPANY and PROCTER &            :
GAMBLE COMPANY and DURACELL, AN ENTITY        :
OF UNKNOWN FORM and LYNNE BURNETT,            :
:
Defendants.          :
:
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

## DEFENDANTS' REPLY MEMORANDUM OF LAW IN
## FURTHER SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT

Edward Cerasia II (ct 13096)
Hema Chatlani (phv 04023)
SEYFARTH SHAW LLP
620 Eighth Avenue, 32nd Floor
New York, New York 10018-1405
(212) 218-5500

Attorneys for Defendants
The Gillette Company
and The Procter & Gamble Company

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................................... ii

I.     PRELIMINARY STATEMENT ...................................................................1

II.    ARGUMENT ..............................................................................................2

       A.   THE SPECULATIVE ASSERTIONS IN CICVARA'S RULE 56(a)2
            STATEMENT AND AFFIDAVIT DO NOT COMPLY WITH L. CIV.
            RULE 56(a)3 OR THIS COURT'S PREVIOUS ORDER ...................................2

            1.   Each of the Statements In The Company's Local Rule 56(a)1
                 Statement Should Be Deemed Admitted ......................................3

            2.   Cicvara's Self-Serving Affidavit Should Be Stricken Because It Is
                 Not Based On Personal Knowledge.............................................4

            3.   This Court Should Strike the Allegations in Cicvara's Moving
                 Papers That Refer to Matters Which This Court Has Already Ruled
                 To Be Irrelevant ......................................................................5

       B.   CICVARA FAILS TO PRESENT ANY EVIDENCE
            DEMONSTRATING THAT HE IS OWED THE VALUE OF HIS
            STOCK OPTIONS........................................................................6

            1.   The Clear And Unambiguous Terms Of The Plan Provide That An
                 Employee's "For Cause" Termination Results In The Automatic
                 Forfeiture Of His Stock Options .................................................6

            2.   The Undisputed Evidence Establishes That Cicvara Engaged In
                 Behavior That The Company Reasonably Determined Constituted
                 Gross Misconduct ......................................................................7

III.   CONCLUSION............................................................................10

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Betancourt v. Slavin*,
   676 F. Supp. 2d 71 (D. Conn. 2009)...........................................................................4

*Bowersox v. P.H. Glatfelter Co.*,
   677 F. Supp. 307 (M.D. Pa. 1988)..............................................................................7

*Byrnie v. Town of Cromwell Bd. of Educ.*,
   243 F.3d 93 (2d Cir. 2001)...........................................................................................7

*Eiden v. McCarthy*,
   531 F. Supp. 2d 333 (D. Conn. 2008).........................................................................3

*Farina v. Branford Bd. of Educ.*,
   2010 U.S. Dist. LEXIS 99730 (D. Conn. Sept. 22, 2010) ........................................3

*Goenaga v. March of Dimes Birth Defects Found.*,
   51 F.3d 14 (2d Cir. 1995).............................................................................................2

*McNally v. Stewart*,
   618 F. Supp. 2d 168 (D. Conn. 2009).........................................................................5

*Miller v. Equitable Life Assurance Soc.*,
   181 Ill. App. 3d 954 (Ill. App. Ct. 1st Dist. 1989).....................................................7

*Nanos v. City of Stamford*,
   609 F. Supp. 2d 260 (D. Conn. 2009).........................................................................4

*Noonan v. Staples, Inc.*,
   556 F.3d 20 (1st Cir. 2009)...........................................................................................9

*Rossi v. W. Haven Bd. of Educ.*,
   359 F. Supp. 2d 178 (D. Conn. 2005).........................................................................5

*Sellers v. M.C. Floor Crafters, Inc.*,
   842 F.2d 639 (2d Cir. 1988).........................................................................................2

*Wagner v. Nat'l City Bank*,
   2010 U.S. Dist. LEXIS 50789 (D. Conn. May 21, 2010) .........................................4

*Weir v. Anaconda Co.*,
   773 F.2d 1073 (10th Cir. 1985) ...................................................................................9

*Welland v. Citicorp, Inc.*,
   2003 U.S. Dist. LEXIS 22721 (S.D.N.Y. Dec. 17, 2003) .........................................9

**RULE**

Local Civil Rule 56(a)3 ....................................................................................................................3

# I.     PRELIMINARY STATEMENT

Defendants The Gillette Company and The Procter & Gamble Company (collectively, the "Company") respectfully submit this reply memorandum in further support of their motion for summary judgment seeking dismissal of Cicvara's remaining claims in the Amended Complaint.[1]

In response to the Company's summary judgment motion, Cicvara has voluntarily withdrawn his claims in Counts Two through Seven of his Amended Complaint, but has held on to his cause of action in Count One for breach of contract seeking to recover the value of his forfeited stock options.  Even so, Cicvara has not presented any evidentiary support for his sole remaining claim.  Instead, Cicvara's opposition papers consist entirely of conclusory allegations, self-serving statements supported solely by his baseless Affidavit, and conspiracy theories and allegations that this Court already ruled are irrelevant to this case.  Cicvara's Affidavit and the remainder of his opposition papers simply ignore that, under Fed. R. Civ. P. 56(e), he must present *admissible* evidence, and not his own conjecture, that the Company breached any agreement with him for stock options.  This he has not done.

Astonishingly, despite admitting throughout his deposition testimony and again in his opposition papers that he engaged in sexual misconduct toward Liu that "might be deemed inappropriate," (Pl.'s Br. at 6), Cicvara now alleges that his behavior was not harmful to the Company and, according to him, did not constitute gross misconduct.  His arguments, however, completely ignore the comprehensive and controlling case law cited in the Company's moving

---

[1]     The abbreviated and capitalized terms used in this reply memorandum are defined in Defendants' Memorandum Of Law In Support Of Their Motion For Summary Judgment ("Defs.' Br.").  Plaintiff's Memorandum Of Law In Opposition To Defendants Motion For Summary Judgment" will be cited herein as "Pl.'s Br."

brief showing that the Company, and not Cicvara, had *sole discretion* to determine whether his actions constituted "gross misconduct which [was] materially and demonstrably injurious to the Company or the subsidiary."  (Defs.' Br. at 11-12.)  Further, Cicvara conveniently overlooks his role as a representative of the Company when traveling abroad; stripping down to his underwear and sitting on the bed of a supplier's female employee while mentioning the word "rape" is simply not the type of representation the Company contemplated.  As the Company's moving papers make clear, Cicvara's atrocious conduct negatively affected its reputation, strained its relationship with Practical Lighting, and disturbed Liu, who complained about his conduct.  The Company was well within its discretion in determining that Cicvara's behavior constituted gross misconduct that was materially and demonstrably injurious to the Company, resulting in an automatic forfeiture of his stock options under the terms and conditions of the Plan.  Because no reasonable jury could conclude otherwise, the Company respectfully requests that the Court grant its motion for summary judgment and dismiss Cicvara's Amended Complaint in its entirety.

## II.  ARGUMENT

### A.  THE SPECULATIVE ASSERTIONS IN CICVARA'S RULE 56(a)2 STATEMENT AND AFFIDAVIT DO NOT COMPLY WITH L. CIV. RULE 56(a)3 OR THIS COURT'S PREVIOUS ORDER

The self-serving, conclusory, argumentative, contradictory statements and mere denials contained in Cicvara's Local Rule 56(a)2 Statement and his Affidavit are insufficient to defeat the Company's summary judgment motion and should be stricken.  *E.g.*, *Goenaga v. March of Dimes Birth Defects Found.*, 51 F.3d 14, 18 (2d Cir. 1995) (a plaintiff cannot defeat summary judgment by ignoring or misstating the record or by relying on "unsupported [factual] assertions . . . conjecture or surmise" or "'upon the mere allegations or denials of the adverse party's pleading'") (citation omitted); *Sellers v. M.C. Floor Crafters, Inc.*, 842 F.2d 639, 643 (2d Cir.

1988) (affidavits must be based on personal knowledge).  Cicvara's 56(a)2 Statement and

Affidavit are devoid of any citations to admissible evidence, are not based on personal

knowledge, and are replete with references to allegations that this Court has repeatedly stated are

*irrelevant* to this case, and thus cannot be used to refute the Company's motion for summary

judgment.

1.      **Each of the Statements In The Company's Local
        Rule 56(a)1 Statement Should Be Deemed Admitted**

Local Civil Rule 56(a)3 requires that "[e]ach statement of material fact by . . . an

opponent in a Local Rule 56(a)2 Statement, and each denial in an opponent's Local Rule 56(a)2

Statement, must be followed by a specific citation to (1) the affidavit of a witness competent to

testify as to the facts at trial and/or (2) evidence that would be admissible at trial."  L.R. 56(a)3.

The Local Rule cautions that "failure to provide specific citations to evidence in the record as

required by this Local Rule may result in the Court deeming certain facts that are supported by

the evidence admitted in accordance with Rule 56(a)1."  L.R. 56(a)3.  Cicvara's lengthy and

conclusory Rule 56(a)2 Statement utterly fails to cite to *any* admissible evidence and instead is

replete with conclusory, argumentative, and contradictory statements without any citations to the

record.  (*E.g.*, Pl.'s 56(a)2, ¶¶ 5-8, 14, 15, 23-25, 27, 28, 30, 31, 33-35, 36-40, 42-48, 50, 56-58,

60-64).[2]  As such, the statements in the Company's Rule 56(a)1 Statement, which are aptly

supported by citations to the record, should be deemed admitted.  *E.g.*, *Farina v. Branford Bd. of

Educ.*, 2010 U.S. Dist. LEXIS 99730, at *5 n.3 (D. Conn. Sept. 22, 2010) (this Court held that

facts contained in defendant's Local Rule 56(a)1 statement are "deemed admitted" because

---

[2]      Cicvara does not even bother to admit or deny certain paragraphs, (*e.g.*, Defs.' 56(a)1,
¶¶ 9-13, 16-22, 26, 29, 32, 41, 49 and 65), rendering the statements in these paragraphs admitted,
*Eiden v. McCarthy*, 531 F. Supp. 2d 333, 338 (D. Conn. 2008) (deeming admitted any statement
which plaintiff failed to admit or deny).

plaintiff's opposing statements contained unsupported denials without "any specific citation to the record."); *Wagner v. Nat'l City Bank,* 2010 U.S. Dist. LEXIS 50789, at *6 n.2 (D. Conn. May 21, 2010) (same); *Nanos v. City of Stamford*, 609 F. Supp. 2d 260, 263 (D. Conn. 2009) (deeming facts admitted where plaintiff's opposition did not cite to admissible evidence and instead "add[ed] commentary or analysis not related to the existence or non-existence of the facts alleged by the City").

       2.      **Cicvara's Self-Serving Affidavit Should Be Stricken**
                 **<u>Because It Is Not Based On Personal Knowledge</u>**

Cicvara desperately seeks to create an issue of fact by submitting a rambling Affidavit, in which he claims that the Company acted "illegally" in terminating him for cause, (Pl.'s Aff., ¶ 18), and that nearly every person he worked with conspired to terminate his employment, remarkably all for different reasons, (*id.*, ¶¶ 28-38). These far-fetched allegations make sweeping accusations against several employees and conclusions about matters which Cicvara does not have any personal knowledge. For example, Cicvara speculates that Lin informed the Company's Human Resources division about Liu's complaint because Lin wanted to hide alleged fraudulent business expense reports, (*id.*, ¶ 29), Yau falsified the incident with Liu in an attempt to "gain a strong leverage" with the Company, (*id.*, ¶¶ 31, 32), a mysterious "person who must have been at the Duracell top position or very close to it" wanted to "get rid" of Cicvara to "destroy" evidence and avoid "negative publicity" of alleged wrongdoings within the Company that Cicvara supposedly uncovered, (*id.*, ¶¶ 28-38, 56), and the Company supposedly "learned" about this alleged wrongdoing in June 2010, when Cicvara asked for discovery in this case, and thereafter "very quietly replaced" three of its executives, (*id.*, ¶ 56). These completely preposterous allegations must be stricken because they are not based on any personal knowledge or evidentiary support, and are wholly insufficient to withstand summary judgment. *E.g.,*

*Betancourt v. Slavin*, 676 F. Supp. 2d 71, 80 (D. Conn. 2009) ("A self-serving affidavit which reiterates the conclusory allegations of the complaint in affidavit form, unsupported by any contemporaneous records, is insufficient to preclude summary judgment."); *McNally v. Stewart,* 618 F. Supp. 2d 168, 174 (D. Conn. 2009) (this Court "disregard[ed] bald assertions" in plaintiff's affidavit "because such statements 'lack sufficient foundation to permit its use to defeat a properly supported motion for summary judgment'") (quoting *Rossi v. W. Haven Bd. of Educ.*, 359 F. Supp. 2d 178, 182 (D. Conn. 2005)).

### 3.     This Court Should Strike the Allegations in Cicvara's Moving Papers That Refer to Matters Which This Court Has Already Ruled To Be Irrelevant

On June 16, 2010, Cicvara filed a motion to compel discovery seeking documents related to Company employees who had no involvement in the decision to terminate his employment or the cancellation of his stock options. (Docket Entry No. 39.)  The motion sought, among other things, documents concerning an alleged affair between two Company employees, Mani Parmar and Ann Cardinale, documents regarding an alleged "illegal" diversion of Duracell batteries from Hong Kong to Latin America, and documents concerning Lin's expense reports.  On July 20, 2010, this Court denied Cicvara's motion to compel and held that these matters were wholly irrelevant to his claims.  Notwithstanding that ruling, Cicvara filed a second motion to compel on February 25, 2011, (Docket Entry No. 68), once more seeking discovery of these matters.  On April 6, 2011, this Court again held that Cicvara was not entitled to this discovery.  (Docket Entry No. 73.)

Despite the Court's rulings, Cicvara once more refers to these irrelevant allegations throughout his Rule 56(a)2 statement, again speculating that his termination was motivated by his unsubstantiated conspiracy theories.  (*See, e.g.*, Pl.'s 56(a)2, ¶¶ 14, 25, 27, 36, 50, 56, 57, 58, 60, 61; Pl.'s Aff., ¶¶ 29, 33, 39, 54, 56.)  This Court should strike these unsubstantiated

allegations because they are wholly inappropriate, irrelevant, and completely ignore the Court's previous Orders.

**B.     CICVARA FAILS TO PRESENT ANY EVIDENCE DEMONSTRATING THAT HE IS OWED THE VALUE OF HIS STOCK OPTIONS**

Even affording Cicvara all the inferences granted in favor of the non-moving party on a motion for summary judgment, he still failed to present any evidence of a breach of contract. The undisputed evidence before this Court demonstrates that Cicvara engaged in admittedly inappropriate sexual behavior toward Liu, resulting in his termination for cause and the automatic forfeiture of his stock options pursuant to Section 6(f) of the Plan.  (Defs.' Br. 9-14.)

**1.     The Clear And Unambiguous Terms Of The Plan Provide That An Employee's "For Cause" Termination Results In The Automatic Forfeiture Of His Stock Options**

Cicvara admits in his opposition papers that the Plan's language is "clear and unambiguous," yet contends, without any citation to relevant case law, that the Company breached the terms and conditions of the Plan.  (Pl.'s Br. at 3.)  Cicvara's argument is belied by the undisputed evidence presented by the Company.  Pursuant to the clear and unambiguous terms of the Plan, "[i]f an employee Participant is discharged for Cause . . . all his options shall *immediately* be cancelled effective as of the date of termination of his employment."  (Defs.' 56(a)1, ¶ 50.) (emphasis added).  Section 6(f)(B) of the Plan specifically defines "Cause" as "the Participant's engaging in illegal conduct or gross misconduct which is materially and demonstrably injurious to the Company or the subsidiary."  (*Id.*)[3]

---

[3]     As a last-ditch effort to preserve his breach of contract claim, Cicvara argues that the Company terminated his employment pursuant to Section 6(f)(A) of the Plan and not Section 6(f)(B).  (Pl.'s Br. at 5-6.)  However, the Company has consistently informed Cicvara that he was terminated because of his behavior toward Liu, and not because of poor performance.  (*See* Defs.' 56(a)1, ¶ 48.)  Although Cicvara correctly points to a typographical error on Peggy

The evidence presented by the Company – and undisputed by Cicvara – makes clear that Cicvara was terminated for cause under the terms of the Plan, resulting in the automatic forfeiture of his stock options and precluding any claim for a breach of contract.  At most, Cicvara demonstrates only that he disagrees with the Company's decision to terminate his employment, which he believes was not "proper."  (Pl.'s 56(a)2, ¶¶ 61-64.)  However, Cicvara ignores the case law cited in the Company's moving papers showing that the Company was well within its discretion in determining that his *admitted* sexual behavior toward Liu constituted "gross misconduct" under the terms of the Plan.  Cicvara cannot ask this Court to reevaluate the Company's business decision based on his unsubstantiated personal opinion that his sexual conduct toward Liu was not gross misconduct and was not harmful to the Company.  *See, e.g.*, *Byrnie v. Town of Cromwell Bd. of Educ.*, 243 F.3d 93, 103 (2d Cir. 2001) ("[The court's] role is . . . not to act as a super personnel department that second guesses employers' business judgments.").[4]  Because Cicvara was terminated for cause under the terms of the Plan, his stock options were automatically forfeited, precluding any claim for breach of contract.

### 2. The Undisputed Evidence Establishes That Cicvara Engaged In Behavior That The Company Reasonably Determined Constituted Gross Misconduct

The record before the Court reveals that the Company had a sufficient and reasonable basis for concluding, after engaging in a thorough investigation of the matter, that Cicvara's unwanted sexual advances toward Liu constituted gross misconduct.  The Company began its

---

Wilczewski's June 16, 2009, correspondence to him, (Wilczewski Decl., Ex. H), that error does not transform his termination into one for poor performance under Section 6(f)(A).

[4]     Cicvara cites to *Miller v. Equitable Life Assurance Soc.*, 181 Ill. App. 3d 954 (Ill. App. Ct. 1st Dist. 1989), and *Bowersox v. P.H. Glatfelter Co.*, 677 F. Supp. 307 (M.D. Pa. 1988) in support of his argument that he did not engage in gross misconduct.  (Pl.'s Br. at 5.)  However, both of these cases discuss the standard for reviewing an intentional infliction of emotional distress claim, and have absolutely no bearing on a Company's decision to terminate an employee for cause for engaging in sexual harassment.

investigation by interviewing Liu and reviewing her documentation of highly disturbing e-mails and text messages sent by Cicvara.  (Defs.' 56(a)1, ¶¶ 32-35.)[5]  Although Cicvara claims that "nobody else from Duracell[] ever contacted Plaintiff to try to get his side of the story," (Pl.'s 56(a)2, ¶¶ 37, 38, 39 & 40), the record reveals otherwise.  In truth, the Company did not complete its investigation until after meeting with Cicvara on June 15, 2011, to ascertain his version of the events.  (Defs.' 56(a)1, ¶ 44.)  During that meeting, Cicvara *corroborated* Liu's allegations by admitting, among other things, that he had touched Liu while in her hotel room and by stating, "Look, it was in a hotel and she was dressed in a way.  I told her I had a feeling I would rape her but I never had that in my mind and I didn't thin[k] she'd think about it seriously."  (*Id.*, ¶ 45.)  After listening to Cicvara admit to visiting Liu's room, touching her, and using the word "rape," Burnett, Wilczewski, and Babis more than reasonably concluded that Cicvara's behavior warranted the termination of his employment for cause.  (*Id.*, ¶ 48.)[6]

Cicvara now argues, without any citation to the record or to case law, that his actions did not injure the Company; however, he ignores that he was entrusted with acting as the face of the Company, (Defs.' 56(a)1, ¶ 14), and made inappropriate sexual advances while acting as a Company representative – an egregious act which the Company reasonably viewed as reflecting

---

[5]     Cicvara claims in his opposition papers that the Company did not produce the text messages reflected in the document identified with Bates number PG000612 prior to filing its motion for summary judgment.  (Pl.'s 56(a)2, ¶ 27.)  The Company produced that document on December 14, 2010, and in fact referred to the document in its Responses and Objections to Plaintiff's Second Request for Production of Documents.  (*See* Pl.'s 56(a)2, Ex. E, at 4.) Cicvara's accusatory statement that the Company "intentionally, never produced" this document because it "is trying to construct the story that could better justify their act of firing Plaintiff for cause," (Pl.'s 56(a)2 ¶ 27), only highlights that his claims are based completely on conjecture and not on a review of the actual evidence.

[6]     Although Cicvara now claims that he never told Liu he had a "feeling [he] would rape her," he nonetheless *admits* that he told her "one could rape you."  (Pl.'s 56(a)2 ¶ 30.) Regardless of the semantics, the record evidence is clear that Cicvara admittedly used the word "rape" with Liu – either telling her that he "could rape" her or that he "would rape" her.

negatively on its reputation and impairing its relationship with Practical – in addition to harming an employee of a Company supplier.  More importantly, Cicvara ignores the clear case law which establishes that the Company – *and not Cicvara* – had sole discretion to determine whether his behavior constituted "gross misconduct."  (Defs.' Br. at 13-14.)  Cicvara cannot ask this Court to overturn the Company's business decision absent a showing that the Company acted arbitrarily, capriciously, or in bad faith – a showing which he has not made here.  *See Welland v. Citicorp, Inc.*, 2003 U.S. Dist. LEXIS 22721, at *35-36 (S.D.N.Y. Dec. 17, 2003) (holding that company had a reasonable basis for terminating the employee for cause when he violated company policy by accepting gifts from a company vendor, resulting in the forfeiture of his unvested stock options, and the company's decision should be set aside *only if* the employer's decision was arbitrary and capricious), *aff'd*, 116 Fed. Appx. 321, 322 (2d Cir. 2004) (summary order); *Noonan v. Staples, Inc.,* 556 F.3d 20, 33-34 (1st Cir. 2009) (explaining that courts are not "super personnel departments" and may perform only a "a limited review" of an employer's decision that an employee was terminated "for cause" under the terms of a stock option agreement "to determine if it was arbitrary, capricious, or made in bad faith") (citations and quotations omitted); *Weir v. Anaconda Co.*, 773 F.2d 1073, 1080 (10th Cir. 1985) (although employee's stock option agreement did not define "for cause," Tenth Circuit held that the determination that plaintiff's termination for poor performance was a "for cause" termination was not arbitrary, in bad faith, or fraudulent).

Cicvara's inability to support his sole remaining claim with any admissible facts demonstrates that the Company did not act arbitrarily, capriciously, or in bad faith in determining that his lewd behavior toward Liu constituted gross misconduct.  Therefore, summary judgment is warranted on Count One.

### III.   <u>CONCLUSION</u>

For the foregoing reasons, and the reasons set forth in the Company's moving papers, the Court should grant the Company's motion for summary judgment; grant to the Company its attorneys' fees and costs in this case; and grant to the Company such other and further relief as the Court may deem just and proper.

Dated this 16th day of June, 2011, at New York, New York.

Respectfully submitted,

SEYFARTH SHAW LLP

By  _s/ Edward Cerasia II_____
   Edward Cerasia II (ct 13096)
   Hema Chatlani (phv 04023)
620 Eighth Avenue, 32nd Floor
New York, New York 10018
(212) 218-5500
ecerasia@seyfarth.com

Attorneys for Defendants
 The Gillette Company
 and The Procter & Gamble Company