UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
:
PREDRAG CICVARA,                                          : Civil Action No. 3:09-cv-2054
                                                          : (JCH) (HF)
          Plaintiff,                                   :
                                                          :
          v.                                            : June 16, 2011
                                                          :
THE GILLETTE COMPANY and PROCTER &                        :
GAMBLE COMPANY and DURACELL, AN ENTITY                    :
OF UNKNOWN FORM and LYNNE BURNETT,                        :
                                                          :
          Defendants.                                   :
                                                          :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**DEFENDANTS' LOCAL RULE 56(a)2 STATEMENT IN RESPONSE TO
PLAINTIFF'S STATEMENT OF UNDISPUTED MATERIAL FACTS**

Pursuant to Local Civil Rule 56(a)2, defendants The Gillette Company and The Procter &

Gamble Company ("P&G") (collectively, the "Defendants" or the "Company") respectfully

submit this response to plaintiff Predrag Cicvara's ("Cicvara's") Statement of Undisputed

Material Facts in opposition to his cross-motion for summary judgment.[1]

1.       Undisputed.

---

[1] The responses set forth herein are followed by citations to the Company's Local Civil Rule 56(a)1 Statement of Material Facts ("Defs.' 56(a)1") (Docket Entry No. 74). The Company incorporates herein all citations to the record provided in Defs.' 56(a)1. Copies of all deposition testimony, deposition exhibits, and other documents cited herein are annexed to the Declaration of Edward Cerasia II, Esq., dated April 15, 2011 (Docket Entry No. 75), the Declaration of Lynne Burnett, dated April 11, 2011 (Docket Entry No. 78), the Declaration of Peggy Wilczewski, dated April 14, 2011 (Docket Entry No. 77), the Declaration of Dina Schmude, dated April 14, 2011 (Docket Entry No. 76), and the Declaration of Kevin Babis, dated April 15, 2011 (Docket Entry No. 79), submitted with the Company's motion for summary judgment.

2. Disputed. Section 6(f)(B) of The Gillette Company 1971 Stock Option Plan (the "Plan") does not state that an employee "must be found to be guilty of 'gross misconduct.'" Rather, Section 6(f) states:

> If an employee Participant is discharged for Cause, as hereinafter defined, all his options shall immediately be cancelled effective as of the date of termination of his employment. For the purposes of the Plan . . . a discharge for "Cause" shall have occurred where a Participant is terminated because of
>
> . . . .
>
> (B) the Participant's engaging in illegal conduct or gross misconduct which is materially and demonstrably injurious to the Company or the subsidiary.

(Defs.' 56(a)1, ¶ 50.)

3. Disputed. Cicvara engaged in admitted sexual misconduct during a business trip to Asia which negatively affected the Company's reputation, caused Bel Liu ("Liu"), a general manager at Practical Lighting ("Practical"), a Company Supplier, to complain about him, and strained the Company's relationship with Practical. (*Id.*, ¶¶ 20-37, 42, 43.) After a thorough investigation, the Company determined that Cicvara's employment should be terminated for cause because of his gross misconduct. (*Id.*, ¶¶ 38-48.)

4. Disputed. The Company learned about Cicvara's inappropriate conduct on June 9, 2009, and conducted an investigation of the matter from June 9, 2009 through June 15, 2009. (*Id.*, ¶¶ 36-47.) The Company terminated Cicvara's employment on June 15, 2009, the same date that Lynne Burnett ("Burnett"), Kevin Babis ("Babis") and Peggy Wilczewski ("Wilczewski") spoke with Cicvara regarding the incident and Cicvara admitted, among other things, that he told Liu "I could rape you." (*Id.*, ¶¶ 44-48.)

5. Disputed. The Company made significant efforts at investigating the matter, which including speaking with Liu, reviewing text messages and e-mails authored by Cicvara,

and speaking with Cicvara regarding the allegations against him.  (*Id*., ¶¶ 37-47.)  At the conclusion of this comprehensive investigation, the Company terminated Cicvara's employment for violating the Company's Purpose, Values and Principles and company policy by engaging in harassing behavior toward a company supplier.  (*Id*., ¶ 48.)

      6.      Disputed.  Cicvara sought to exercise his stock options after these options were already forfeited by the terms of the Plan.  (*Id*., ¶ 61.)

      7.      Undisputed in part and disputed in part.  The Company cannot allow Cicvara to exercise his stock options because these options were forfeited pursuant to Section 6(f) of the Plan.  (*Id*., ¶¶ 50, 57, 60, 61.)

      8.      Disputed.  At the time of his termination, Cicvara could not exercise his stock options because he had been terminated for cause, resulting in the forfeiture of his stock options under Section 6(f) of the Plan.  (*Id*., ¶¶ 50, 57, 60, 61.)

      9.      Undisputed in part and disputed in part.  The Company agrees that Cicvara was terminated on June 15, 2009; however, his termination occurred during an in-person meeting at a conference room in the Company's Bethel, Connecticut office.  (*Id*., ¶¶ 44, 48.)  The Company thereafter notified Cicvara on June 16, 2009, and again on July 6, 2009, that his stock options had been forfeited.  (*Id*., ¶¶ 58-61.)

      10.      Disputed.  As stated in response to paragraph 5, the Company made significant efforts at investigating the matter, which including speaking with Liu, reviewing text messages and e-mails authored by Cicvara, and speaking with Cicvara regarding the allegations against him.  (*Id*., ¶¶ 37-47.)  At the conclusion of this comprehensive investigation, the Company terminated Cicvara's employment for violating the Company's Purpose, Values and Principles and company policy by engaging in harassing behavior toward a company supplier.  (*Id.*, ¶ 48.)

11. Disputed. The Company does not understand which "administrative and/or appeal remedies" Cicvara references in this statement.

12. Disputed. Although the Company does not understand which "administrative and/or appeal remedies" Cicvara references in this statement, it states that it has not "waived" any such remedies.

13. Disputed. The Company had sole discretion to determine whether Cicvara's actions constituted "gross misconduct which [was] materially and demonstrably injurious to the Company or the subsidiary." (Defendants' Memorandum of Law in Support of Their Motion for Summary Judgment at 11-12.) Further, the Company reasonably concluded that Cicvara's inappropriate sexual advances toward Liu constituted gross misconduct. (Defs.' 56(a)1, ¶¶ 48, 57.)

14. Disputed. As the Company stated in response to paragraph 3, Cicvara engaged in inappropriate sexual behavior while on a business trip, which impacted the Company's reputation, caused harm to Liu, who complied about Cicvara, and impaired the Company's relationship with Practical. (*Id.*, ¶¶ 20-37, 42, 43.)

15. Disputed. As stated in response to paragraphs 5 and 10, the Company thoroughly investigated the matter by speaking with Liu and Cicvara and reviewing text messages and e-mails authored by him. (*Id.*, ¶¶ 37-47.) The Company terminated Cicvara's employment for cause only after its comprehensive investigation. (*Id.*, ¶ 48.)

16. Disputed. The Company is not aware of any "letters of dismissal" that state that it terminated Cicvara because of a violation of Section 6(f)(A) of the Plan. The Company admits, however, that Wilczewski erroneously cited to Section 6(f)(A) of the Plan in her June 16, 2009 correspondence to Cicvara. (Wilczewski Decl., Ex. H.) However, the Company had made clear

4

at all times that it was terminating Cicvara's employment because of his inappropriate behavior toward Liu, and not because of poor performance.  (Defs.' 56(a)1, ¶ 48.)

17. Disputed.  Section 6(f)(A) defines "cause" as the "Participant's continued failure to perform substantially his duties with the Company . . . after a written demand for performance is delivered to the Participant."  (Cicvara Dep. Ex. 15 at PG000191-92.)  Cicvara, however, was terminated pursuant to the definition of "cause" found in Section 6(f)(B) of the Plan and not the definition in Section 6(f)(A).  (Defs.' 56(a)1, ¶ 48.)

18. Undisputed in part and disputed in part.  The Company agrees that it did not provide Cicvara with a written demand pursuant to Section 6(f)(A); however, the Company had no obligation to do so because Cicvara's employment was terminated pursuant to Section 6(f)(B) of the Plan and not Section 6(f)(A).  (Defs.' 56(a)1, ¶ 48.)

## DEFENDANTS' LOCAL RULE 56(a)2 STATEMENT OF DISPUTED MATERIAL FACTS

19. Pursuant to Local Rule 56(a)2, the Company states that there are no material facts as to which it is contended there is a genuine issue to be tried and therefore the Company is entitled to summary judgment.  The Company further states that, at the very least, all of the

above facts show that there are issues of fact precluding Cicvara's cross-motion for summary judgment.

Dated this 16th day of June, 2011, at New York, New York.

Respectfully submitted,

SEYFARTH SHAW LLP


By  s/ Edward Cerasia II
    Edward Cerasia II (ct 13096)
    Hema Chatlani (phv 04023)
620 Eighth Avenue, 32nd Floor
New York, New York 10018
(212) 218-5500
ecerasia@seyfarth.com


Attorneys for Defendants
 The Gillette Company
 and The Procter & Gamble Company